HERRING & CO. v. CANNON.

1. A merchant purchased and received possession of an iron safe with his name painted thereon by the vendor, and for the purchase money gave to the vendor two notes, to each of which was added the stipulation that "in accordance with the terms of an agreement for the purchase of the safe, said vendors do not part with any title thereto until the purchase money has been fully paid." *Held*, that this was "an instrument of writing in the nature of a mortgage," which, under the second section of the act of 1843, required recording to be valid against subsequent creditors or purchasers for valuable consideration without notice. *Cases reviewed* and *Talmadge* v. *Oliver*, 14 *S. C.*, 522, explained.

2. The act of 1843 was intended to embrace such conditional sales, and to render all secret liens, whether verbal or written, invalid as against the rights of subsequent creditors or purchasers for valuable consideration without notice.

3. Such safe having been attached and sold as the property of the vendee, at the suit of subsequent creditors without notice, the purchaser at such sale has good title to the safe, although having notice of the vendor's claim. *McKnight* v. *Gordon*, 13 *Rich. Eq.*, 223, recognized and followed.

Before WALLACE, J., Orangeburg, May, 1883.

The opinion states the case.

*Messrs. James F. Izlar* and *S. Dibble*, for appellants.

*Messrs. De Treville & Glover*, contra, cited 1 *Chit. Cont.*, 538 (11th Am. edit.); 1 *Pars. Cont.*, 537; *Benj. Sales*, § 320; 14 *S. C.*, 522; 1 *Bay*, 312; 4 *Mass.*, 269; 4 *Wash. C. C.*, 79, 588; 20 *S. C.*, 17.

April 26, 1884.  The opinion of the court was delivered by MR. JUSTICE McGOWAN.  This was an action for the recovery

of possession, and for damages for the detention, of one patent Champion Iron Safe, claimed by the plaintiffs, valued at $105.69, and alleged to be illegally detained by the defendant, Peter G. Cannon. It appeared that in August, 1880, the plaintiffs sold the safe to one E. S. Griffin for $105.63, payable January 1 and April 1, 1881. The plaintiffs delivered the safe to the purchaser, with the name "E. S. Griffin" conspicuously painted on it. Notes were given for the purchase money, with a condition embodied in these words: "This note having been given to said Herring & Co. in part payment for a safe, and in accordance with the terms of an agreement for the purchase thereof, said Herring & Co. do not part with any title thereto until the purchase money has been fully paid."

Some time after the purchase of the safe, and while it was in his possession, the said Griffin contracted debts with Steffens & Werner and P. H. Hanes & Co., who had no notice whatever of the claim of Herring & Co. to the safe. These creditors sued Griffin, and recovered judgment against him, having in the meantime attached the safe, which was sold by the sheriff under an order of court in said process. At the time of the sale, the sheriff had been notified of plaintiffs' claim, but no public notice was given of it on the day of sale. James F. Izlar, Esq., who had also heard of the claim of plaintiffs, became the purchaser at the price of $55, which was paid upon the judgments of said creditors. Izlar afterwards sold and delivered the safe to the defendant, who was sued for the same.

The Circuit judge charged the jury that the condition on the note being in writing was effective "not only between the parties, but as to all other persons whatsoever; that at the time this contract was made, the law did not require that it should be recorded, or that notice should be given of its existence." Under this charge, the jury found a verdict for the plaintiffs, and the defendant appeals to this court upon the following exceptions:

1. "Because it being in evidence that one E. S. Griffin purchased the safe from the plaintiffs, and gave for the purchase money thereof two notes, to each of which was added the condition [as before stated], and thereupon the safe was delivered to him, with his name, E. S. Griffin, conspicuously painted thereon,

and remained in the possession of the said Griffin until seized under an attachment at the suit of subsequent creditors of the said Griffin, his honor, the presiding judge, erred in instructing the jury that 'at the time this contract was made, the law did not require that it should be recorded, or that notice should be given of its existence.'

2. "Because his honor erred in instructing the jury that such a contract, at the time above mentioned, was valid against subsequent purchasers for valuable consideration without being recorded or actual notice.

3. "Because his honor erred in instructing the jury that the decision in *Talmadge* v. *Oliver* must necessarily conclude this case."

Conditional sales of personal property delivered, annexing a secret condition to a visible transaction appearing to the world unconditional, gave rise, for many years, to much discussion and some difference of opinion in our courts. It may be safely stated that there was a general concurrence that such contracts might be enforced between the parties who made them; but as possession is *prima facie* evidence of title in relation to personal property, there were obvious difficulties as soon as they touched the rights of subsequent creditors and *bona fide* purchasers, who dealt with the apparent owner on the faith of title, springing from his unexplained possession. Such conditions in sales, whether verbal or in writing, were held valid as to the parties themselves and their subsisting creditors down to 1839. See *Dupree* v. *Harrington, Harp.*, 391; *Reeves* v. *Harris*, and *Bailey* v. *Jennings*, 1 *Bail.*, 563. But in that year was decided by a divided court the case of *Bennett* v. *Sims, Rice*, 426, which may be regarded as the leading case in sustaining such secret conditions, as it went so far as to hold that there was really no difference between a verbal and written condition, and in that case sustained one that was merely verbal.

That case, however, expressly excepted and reserved the question as to subsequent creditors and *bona fide* purchasers. In delivering the judgment of the majority of the Court of Errors, Judge Earle said: "It is a remarkable coincidence in all the cases, beginning with *Dupree* v. *Harrington, supra*, down to the

case under consideration, that neither the rights of subsequent creditors nor the rights of subsequent purchasers without notice are at all involved. * * * In regard to subsequent creditors, it will be time enough to provide for them when they complain. Whenever the vendor's right shall come in conflict with the claims of those who become creditors after the transfer of possession, then the court will endeavor so to modify the rule, or restrict its operation, as to protect the rights of *bona fide* creditors who may have trusted the supposed purchaser on the faith of the property in his possession."

In 1839 the law was thus announced, with a doubtful judicial saving as to the rights of subsequent creditors and *bona fide* purchasers, and immediately thereafter the legislature (possibly moved thereto by the decision in *Bennett* v. *Sims*) interposed, and passed the act of 1843, "To amend the law in relation to recording mortgages and to regulate the lien thereof" (11 *Stat.*, 256), afterwards substantially embraced in the general registry act of 1876, and re-enacted as section 2346 of the general statutes. This act has three sections. The first provides that "no mortgage or other instrument of writing in the nature of a mortgage of real estate shall be valid so as to affect the rights of subsequent creditors or purchasers, &c., unless the same shall be recorded," &c. The second provides that "no mortgage or instrument of writing in the nature of a mortgage of personal property, shall be valid so as to affect the rights of subsequent creditors or purchasers, &c., unless the same shall be recorded," &c. And the third declares "that every verbal agreement between the vendor and the vendee of personal property, whereby the vendor, who has parted with the possession thereof to the vendee, shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors or purchasers for valuable consideration without notice."

It is insisted for the defendant that the paper in contention here is an "instrument of writing in the nature of a mortgage," which by the act was required to be recorded, and, not having been, is null and void as to the *subsequent creditors* of Griffin, the vendee. By the contract the vendors, who parted with the possession of the safe to Griffin, undertook to reserve to themselves an interest in the same, and therefore it is precisely such a

contract as is denounced by the third section of the act, and if it were merely verbal would certainly be void.   But as it is in writing the question is, whether it is such an "instrument in the nature of a mortgage" as is required to be recorded by the second section of the act.   It is plain that the purpose of the act in all its sections was to protect the rights of subsequent creditors and purchasers against secret liens, and the third section shows that such contracts as the one before us was, in the contemplation of the framers of the act.   The mischief aimed at was the secret nature of the contract, not whether it was verbal or in writing, as to which distinction, Judge Earle in speaking for the Court of Errors in the case of *Bennett* v. *Sims*, declared that he "had tortured his faculties to conceive a ground of difference except only as to the facility and mode of proof."

There being, then, in this respect as to third parties no difference between a verbal agreement and one in writing, and the legislature having declared the former, incapable of registry, to be absolutely void, it would seem to be the natural and logical conclusion that as to the latter, which is capable of registry, they intended to accomplish the same result by declaring that it should be void unless recorded.   We think such was the intention of the act.   As was well said by Judge Cothran, in the Circuit decision of *Lombard & Co.* v. *Black, sheriff,*[1] "The plain purpose of the statute was to render secret liens upon personal property ineffectual as against subsequent creditors and purchasers *bona fide;* and this doctrine finds sanction in the very principles of justice itself, especially in this, that where one of two innocent persons is to suffer loss, it should fall on him by whose conduct it was caused."

This view is not only based upon the express words of the act itself, and the principles of justice, but, as we conceive, is supported by the adjudicated cases.   The first case that arose after the passage of the act was that of *Cochran* v. *Roundtree,* 3 *Strob.,* 222.   In that the condition was verbal, and although it was made before the act, it was held to be void.   In delivering the unanimous judgment of the court Judge Wardlaw said: "Looking to the dangerous nature of such verbal stipulations (since that time

[1] Decided at Walterboro, June term, 1883.

guarded against by the act of 1843, which amounts to a legislative declaration concerning a debated point of law), to the policy which forbids a seller from availing himself of a secret condition annexed to a visible transaction that appears to be unconditional, whereby an innocent purchaser has been deluded, and to the great advantage of having an inflexible rule of law rather than the uncertain determination of a jury, this court is unwilling to go beyond the case of *Bennett* v. *Sims.* Stopping where that stopped, we hold that, although the condition may have been binding on Wil iams, it did not bind a subsequent *bona fide* purchaser without notice."

The next case in which the act was referred to was that of *McCorkle* v. *Montgomery*, 11 *Rich. Eq.*, 132. It is true that was in reference to the somewhat analogous doctrine of the equity of the vendor as to land; but in the course of his opinion Chancellor Dunkin said: "While something is due to the vendor who parts with his property, not less certainly is due to the subsequent creditor who has trusted the ostensible as well as the legal owner of the estate, without any knowledge of a secret incumbrance. Upon this subject the language of Chief Justice Marshall, in *Bayley* v. *Greenleaf*, 7 *Wheat*, 46, is instructive: 'To the world,' says he, 'the vendee appears to hold the estate, divested of any trust whatever, and credit is given him, in the confidence that the property is his own in equity as well as law. A vendor, relying upon this lien, ought to reduce it to a mortgage, so as to give notice of it to the world. If he does not, he is, in some degree, accessory to the fraud committed on the public, by an act which exhibits the vendee as the complete owner of the estate on which he claims a secret lien. It would seem inconsistent with the principles of equity, and with the general spirit of our laws, that such a lien should be set up in a court of chancery to the exclusion of *bona fide* creditors.' It may be added that the act of 1843, requiring all mortgages of real estate, however formal and perfect, to be recorded within sixty [now forty] days, *may well be regarded as a legislative declaration of the prohibitory policy of the country against any such secret liens.*"

The next case, in the order of time, was that of *McKnight* v. *Gordon*, 13 *Rich. Eq.*, 223. That was as to a condition in writing

under the very section of the act involved here, in which Mr. Justice Inglis delivered an elaborate and exhaustive judgment, which is absolutely conclusive of the question here, if the paper in this case belongs to the same category as the one in that, and must, as there, be regarded as an "instrument of writing in the nature of a mortgage." Upon that point we have no doubt. The paper in that case was in these words: "For the full and better securing of W. G. McKnight from all liability for which he may become indebted as my surety on any notes, &c., I have bargained, sold, and delivered unto the said W. G. McK. my two negro fellows, Bill and James, to have and to hold the same as his own right and title, until he shall become relieved from all indebtedness incurred as security as aforesaid." In this case notes were given with the condition inserted: "This note, having been given to said Herring & Co. in part payment for the purchase thereof, and in accordance with the terms of an agreement for the purchase thereof, said Herring & Co. do not part with any title thereto until the purchase money has been fully paid." Was not this in all respects as much a mortgage as the bill of sale to McKnight? Here was a sale and delivery of the property, marked with the name of the purchaser, price agreed upon, and notes taken, but with a condition purporting to retain title in the property as a security for the purchase money. It is altogether unmeaning for the parties to say that it should not amount to a sale, when the transaction exhibits every element of a sale and transfer of ownership. It seems to us that the conditional note was an "instrument of writing in the nature of a mortgage."

The next in order was the recent case of *Talmadge* v. *Oliver*, 14 *S. C.*, 522, cited and relied on in the court below. That was a case in which the contract was sued upon within the time for recording, and therefore the ruling did not touch the question as to the necessity of recording. So far as reference was made to the character of the paper, it was not at all in conflict with the view here presented, but on the contrary precisely in accord with the cases above cited. The chief justice, in delivering the judgment of the court, distinctly declared the conditional contract to be in the nature of a mortgage. He said: "But at all events, as to this case the agreement held by the appellant may be re-

garded as an equitable mortgage. It has all the elements of a mortgage. It was to secure a contract. The property was designated and the title reserved to insure the performance of the contract, and it is prior in date to respondent's mortgage. True, it was not recorded, and being without a witness, there might have been some difficulty in having it recorded; *but the action was commenced within the time allowed for recording, so that respondent had actual notice within the time. This was sufficient and supplied the place of recording,*" &c. The last paragraph shows conclusively that the question of recording was not in the case, and the *adjudication* rests on that fact.

Upon the whole, considering the time and occasion of the passage of the act of 1843, the state of the law then recently announced in the case of *Bennett* v. *Sims,* and the policy of our law as to registry, as well as its express terms and the adjudications under it, we must conclude that it was intended to embrace such conditional sales as the one in this case, and in that way to cut up, root and branch, *all secret liens,* whether written or verbal, in respect to the rights of subsequent creditors and purchasers for valuable consideration without notice.

The plaintiffs' "contract in the nature of a mortgage" was not recorded as required, and the only remaining question is whether the defendant, Cannon, is entitled to the protection given to subsequent creditors and *bona fide* purchasers within the meaning of the act of 1843. It will be observed that the act embraces two distinct classes of persons, viz., subsequent creditors and *bona fide* purchasers, which have no necessary connection with each other; and in order to claim the protection afforded, it is not necessary that a party should unite in himself the character of both; but it is enough if he can show that he is entitled to the rights of either a subsequent creditor or a *bona fide* purchaser without notice. It is conceded in the case that the safe was seized and sold under legal process issued by subsequent creditors without notice, and therefore it is unnecessary to inquire whether Izlar, the first purchaser, or Cannon, to whom he sold, had actual notice of plaintiffs' claim at the time of their respective purchases. The purchase at the sheriff's sale for the benefit of suing creditors, admitted to be subsequent creditors without notice, gave

to the purchaser that protection which is extended to the class to
which the creditor in execution belonged, whether he, the pur-
chaser, had actual notice or not.    As was said by Mr. Associate
Justice Inglis, in the case of *McKnight* v. *Gordon, supra:* "To
guarantee to one a right to sell, and deny to all others a right to
buy, would be solecism in law.    It would be imputing folly as
well as mischief to the law under such circumstances to say that
it either permitted the (subsequent) creditor alone to buy or pre-
cluded him also as a purchaser with, though a creditor without,
notice."

But without now going into the learning upon the subject of
notice to different successive purchasers of the same property, we
deem it sufficient to refer to the aforesaid case of *McKnight* v. *Gor-
don* for the argument and authorities upon the subject.    That case
is so full and clear and so exactly in point that it must be con-
clusive of this.    It was there held that "the act of 1843 pro-
tects from an unrecorded mortgage two distinct classes of pur-
chasers at sheriff's sales : (1) those who purchase *without notice,*
even where the debt was contracted before the mortgage was exe-
cuted ; and (2) those who purchase for satisfaction of debts con-
tracted with *a subsequent creditor without notice ;* and here it is
immaterial whether the purchaser had notice or not."    We think
the defendant is entitled to the protection extended to those who
fall under the second class above stated, whether he or his ven-
dor, Izlar, had notice or not.

The judgment of this court is that the judgment of the Circuit
Court be reversed, and that the complaint be dismissed.

MR. JUSTICE MCIVER concurred.

MR. CHIEF JUSTICE SIMPSON.    I concur in this opinion on
the ground that the paper in question must be regarded as a
writing in the nature of a mortgage of personal property, and
therefore covered by the second section of the act of 1843, incor-
porated into the general statutes.

                                           Judgment reversed.