## PIESTER v. PIESTER.

1. A sealed note payable one day after date, "with interest at the rate of two per cent. a month," carries the stipulated rate of interest after maturity.

2. A subsequent creditor for valuable consideration without notice of an unrecorded mortgage is protected by the act of 1843, not only as to the land covered by the mortgage, but also as to the general assets of the estate of the mortgagor after his decease.

3. Proceedings in the Probate Court and an order therein directing a sale and requiring a mortgage for the purchase money, do not constitute constructive notice of an unrecorded mortgage taken pursuant to such order.

4. A mortgage as such has no precedence in the administration of the estate of one deceased, except to the extent of its specific lien upon the property mortgaged ; that being exhausted, it ranks according to the grade of the demand secured thereby. *Kinard* v. *Young*, 2 *Rich. Eq.*, 258, approved, and *Edwards* v. *Sanders*, 6 *S. C.*, 316, reversed.

Before HUDSON, J., Newberry, November, 1883.

The opinion fully states the case.

*Messrs. Suber & Caldwell,* for R. H. Wright.

*Mr. Geo. S. Mower,* contra.

January 10, 1885.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This was an action in the nature of a bill to marshal the assets of David B. Piester, who died intestate in 1873. In his life-time, November, 1869, the intestate executed a mortgage of 400 acres of land to John T. Peterson, probate judge for Newberry County, to secure his bond as guardian of Laura Lake, and on December 21, 1869, he executed another mortgage of the same land to the said judge of probate, to secure his other bond as guardian of Robert G. Lake. The intestate had been appointed guardian of these minors, upon his own *ex parte* petition in the said Probate Court.

These mortgages were not recorded in the register's office of the county until August 7, 1872 ; and in the meantime, April 7, 1871, the intestate having borrowed money from Robert H.

Wright, in order to secure it, executed a sealed note to him as follows: "$400.00. One day after date I promise to pay to the order of R. H. Wright four hundred dollars, with interest at the rate of two per cent. per month, for value received. Witness my hand and seal, 7th August, 1871. (Signed) D. B. Piester. [L. S.]" Wright had no actual notice of either of the mortgages at the time he loaned the money and took the above note, or indeed until they were produced in this action in 1884. The Circuit judge ruled that the Wright note bore interest after as well as before maturity, at the rate of two per cent. per month; and, second, that the guardianship bonds should rank equally with the Wright note (all being specialty debts) as to the 400 acres of land embodied in the mortgage; but that the guardianship bonds should, under the act of 1789, take precedence as "debts of mortgage" over the mere specialty demand of Wright, as against Piester's general estate outside of the mortgage.

The parties appeal to this court upon two grounds: *First.* That his honor, the Circuit judge, committed error in allowing interest on the Wright note after its maturity at a greater rate than seven per cent. per annum. *Second.* That his honor, the Circuit judge, erred in not allowing the demand based upon the sealed note of Wright to rank equally with the guardianship bonds in regard to the general estate of the intestate Piester.

I. In regard to the interest on the Wright note, we concur with the Circuit judge that it should bear interest as specified after it fell due. It is well settled by numerous cases that in general an obligation to pay interest at any other rate than seven per cent. per annum only carries that interest to the date of its maturity, unless the obligation contains an agreement of the parties that the peculiar rate shall run as well after as before maturity, if this latter is also provided for. And whether the obligation expresses such agreement is simply a matter of construction. *Langston* v. *R. R. Co.*, 2 *S. C.*, 248; *Briggs* v. *Winsmith*, 10 *Id.*, 133; *Sharpe* v. *Lee*, 14 *Id.*, 341.

Do the terms of the note in this case, properly construed, contain such an agreement? We think they do. The phrase "one day after date" is generally adopted to express a due note, and it seems unreasonable to suppose that the parties intended that the

note should bear interest only for one day, if so much. But without putting much stress on this, it is a well-recognized rule of construction that every word, if possible, should have attached to it some meaning. The note really does not bear interest at all until the day after its date, April 8, 1871, when it fell due. There is no such expression as "interest from date," but the words are "one day after date, with interest at the rate of two per cent. per month."

It is a mistake to suppose that the case of *Briggs* v. *Winsmith*, 10 *S. C.*, 133, was in this respect similar. The report of that case shows that the note was payable twelve months after date, "with interest from date at the rate of twelve per cent. per annum." As this note has no such statement, the interest indicated could only begin to run on the day of its maturity. "The general rule is that when a sum is liquidated and ascertained and to be paid on a day certain, without any reference to the subject matter of the contract, interest is allowed from the day fixed for payment. It is a compensation by way of damages for the detention of another's money after the time at which by law or contract it should have been paid." *Schmidt* v. *Limehouse*, 2 *Bail.*, 276. The words "per month" may possibly have reference only to the rate and not the time, but, as we have seen, it could only be the time after the maturity of the note, the interest to accrue thereafter.

II. As to the rank of the bonds to the probate judge to secure which the mortgages not registered within time were given. The act of 1843 provides that "no mortgage or other instrument of writing in the nature of a mortgage of real estate shall be valid so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded in the office of the register of mesne conveyance for the district wherein such real estate lies within sixty days from the execution thereof," &c. There can be no doubt that in 1871, when Wright loaned his money and received the note of the intestate (Piester), he became a subsequent creditor for valuable consideration without notice of the mortgages, which were not recorded until August 7, 1872. There is no allegation that he had actual notice.

It is insisted, however, that constructive notice would suffice, and he must be charged with that, for the reason that these mortgages were executed under an order made in a case in the Probate Court, which being a court of record, all the world must take notice of what transpired therein. There are several answers to this view, but it cannot be necessary to do more than to refer to the express terms of the act of 1843, which declares mortgages "invalid as against subsequent creditors for valuable consideration," unless the same shall be recorded in the office of the register of mesne conveyance, &c.; which was not done until after Wright's debt was contracted, and the case does not belong to that class which holds that actual notice supersedes the necessity for recording.

Assuming, then, that Wright was a subsequent creditor without notice of the mortgages, they were as to him "invalid," and, as we think, he stands precisely as if they had never been given. The Circuit judge admits this, so far as concerns the alleged lien on the 400 acres of land covered by the mortgages. He says: "The act of 1843 declares that mortgages shall not be valid, so as to affect the rights of subsequent creditors without notice, unless recorded in sixty days after execution. It is conceded that if these mortgages had been recorded before Wright's note arose, though later than sixty days after execution, this would have constituted constructive notice. But this was not the case, and as the act declares them 'invalid' so as to affect the rights of one in Wright's position, it seems impossible to escape the conclusion that these mortgages cannot affect Wright's claim as to the estate of the debtor therein conveyed. The terms are broad and sweeping, but they necessarily restrict the operation of such mortgages to the property specifically embodied in them," &c.

But, as we understand, the judge goes further and holds that the judge of probate, as mortgage creditor, must take precedence of ordinary specialties, as to all other property of the intestate outside of the land embraced in the mortgage. He says: "The act of 1789 declares the relation of mortgage creditors to all other creditors of a decedent, and it would be erroneous to hold that the mortgages in these cases became inoperative as to the property specifically embraced in them, and should lose rank as

mortgages, as to everything not embraced in them. In marshaling the assets, the mortgages retain their rank except as to the Wright note, and as to that they lose their rank only as a lien on the land conveyed. In the fund arising from the sale of that land Wright will share ratably with them as specialty claims. All other specialty claims are excluded from such participation, because as against such these mortgages are valid," &c.

In this we cannot concur. We do not mean to say that, the mortgages, having been recorded (although out of time), may not have a valid lien on the land embraced, as to such creditors as do not come within the category of subsequent creditors without notice; but it seems to us that it was error to hold that the bonds secured by mortgages should have precedence over other specialties, as to the general property of the estate, outside of the mortgage. As we understand it, a mortgage is a pledge, a mere security *quoad* the property mortgaged, and takes rank only by virtue of its lien on the specific property embraced in it. As soon as the property pledged is exhausted or destroyed, the lien ceases to exist. With its subject-matter expunged and its lien gone, a mortgage cannot possibly be more than the sealed covenant of the party. There is nothing in principle or in the nature or terms of the instrument itself, which authorizes the mortgagee to foreclose it upon any other property of the mortgagor, while living; and why should it be otherwise after his death?

If such arbitrary right exists, it can only be by the express terms of the act of 1789. As stated in several of the cases, that act was very badly drawn and abounds in obscurities, but we fail to see that there is anything in it which requires us to confer upon a mortgage a distinct grade attaching to the instrument itself, as distinguished from its lien upon the property embraced in it. In classifying the debts of a decedent, and fixing the order in which they shall be paid, the act says: "Judgments, mortgages, and executions, the oldest first." * * * Section 4. "No preference shall be given among the creditors in equal degree where there is a deficiency of assets, except as to judgments, mortgages, and executions, the oldest of which shall be paid first, mortgages to date from the day of recording, and executions from the day when entered in the sheriff's office, saving

to creditors their rights under any special lien," &c. Does this give a mortgage, apart from the property embraced, a rank with judgments?

Mortgages were properly, if not necessarily, placed in the class with judgments, for the reason that they had liens, and to that extent should be paid—"the oldest first." But the lien of a mortgage is special, while that of a judgment is general, and the reason for the classification ceases as soon as the special lien is discharged. Why say that the oldest should be first paid, unless, reference was especially to the lien? After they were discharged there could be no propriety in requiring that the oldest should be first paid. Can it be contended that a mortgage on land is not only made a preferred claim on personalty, but even in this new character must be paid according to registry, which of course can give no notice as to property not embraced in the instrument recorded? Other specialties take rank according to dignity, not their age. We think that a creditor of a decedent's estate, whose claim is secured by a mortgage on particular property, has under the act a lien upon that property; but when that is exhausted the mortgage as such is *functus officio;* and in further marshaling the assets, the demand must rank according as it may be a single contract or specialty.

This construction, as we think, is in accordance with principle and supported by the weight of authority. *Tunno* v. *Happoldt*, 2 *McCord*, 188, was a law case, an action of assumpsit on promissory notes against the representative of John M. Happoldt, the maker. The administrator obtained leave to file the plea of *plene administravit præter*, and the question was whether a certain instrument of writing (a mortgage) was to be ranked in the legal order of payment of intestate's debts among bond creditors. There was a special verdict, finding that the intestate left "one obligation or sealed instrument of mortgage and convenant to Thomas Ogier;" that the administrator had paid off all the other demands, and had in hand a certain sum of money, to be divided in average proportion among the simple contract creditors. If the court should be of opinion that the aforesaid sealed instrument to Thomas Ogier is an obligation, and to be preferred to simple contract creditors, we find for the defendant on his second

plea. But if the court should be of opinion that the said instrument to Thomas Ogier is to be paid` in average and proportion only with the simple contract creditors, then we find for the plaintiff." It was held, "that a mortgage upon certain property to secure a note (not under seal) will not, under our administration law, give such creditor a priority as in the nature of a deed, to simple contract creditors."

In *Kinard* v. *Young,* 2 *Rich. Eq.,* 258, Chancellor Johnston rendered a circuit decree criticising and construing the act of 1789 differently, but the old Court of Appeals in Equity, including that distinguished Chancellor himself, reversed the judgment, sustaining *Tunno* v. *Happoldt, supra,* and holding that "in the assets of an insolvent testator or intestate, mortgages as mortgages, are not entitled to priority over rent, specialties, and simple contract debts, except so far as they are liens on any particular part of the estate. After the lien is exhausted the grade of the demand must be determined by the nature of the instrument which the mortgage was given to secure," &c.

We think we may safely say that this was regarded as the settled construction of the act of 1789 until as late as 1875, when the judgment of this court was pronounced in the case of *Edwards* v. *Sanders,* 6 *S. C.,* 316, which disregarded the cases above cited and held, that "under section 26 of the act of 1789 prescribing the order in which debts of a decedent are to be paid, mortgages rank in the third class and are entitled to payment out of the general estate in preference to specialty and simple contract debts." This is the case upon which the Circuit judge rested his decree; but with all due respect, and an anxious desire to maintain consistency in the adjudications of this court, we are constrained to say that, in our judgment, the case of *Edwards* v. *Sanders* is not only unsustained by proper rules of construction, but is in direct opposition to the decided cases, and what was at that time considered the settled law of the state.

The judgment was rested mainly on the view that "the order of priority prescribed by the act was only to be observed in the application of such general assets in the hands of the executor or administrator as were not bound by any specific lien. * * * It is then not the lien which the act deals with, but the character

of the debt, and it is that which is to determine its rank in the order of payment," &c. We think that the most cursory reading of the act will show that this is a mistake. If the order prescribed only referred to such general assets as were not bound by liens, why mention "judgments, mortgages, and executions" at all? And as the rights of liens are declared, by what authority can it be said that there was no declaration as to the rights of specific liens? We see no authority for such assumption and think mortgages were only classed with judgments on account of their liens.

So strong was the general opinion of the profession upon the subject that in 1878, soon after the judgment was published in the case of *Edwards* v. *Sanders*, the legislature passed an act reaffirming the doctrine of *Kinard* v. *Young* and declaring : "That in the administration of the assets of a decedent, mortgages shall not be entitled to a priority over rents, debts by specialty, or debts by simple contract, except as to the particular parts of the estate affected by the liens of such mortgages. That after the property covered by the liens is exhausted, the grade of the demand shall be determined by the nature of the instrument which the mortgage was given to secure." 16 *Stat.*, 686. It is true the facts of the case at bar arose before that act was passed, and therefore they are not in terms controlled by it. But the act seems to be somewhat in the nature of a declaratory law, upon a subject as to which there were differences of opinion ; but whether that is so or not, in our judgment the act only declared what has been the law of the state since the act of 1789.

The judgment of this court is that the judgment of the Circuit Court be modified according to the conclusions herein announced.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE MCIVER. As to the first question involved I concur generally, but as to the second question I concur in the result only, preferring to rest my conclusion upon the effect of the act of 1843, which in terms declares that unrecorded mortgages shall not be valid, "so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice."

The necessary effect of this declaration is that an unrecorded mortgage is void—is in fact not a mortgage—whenever the effect of so regarding it would be to affect the rights of a subsequent creditor without notice. Now as Robert H. Wright is conceded to be such a creditor, it seems to me that it follows necessarily that his rights cannot, in any way, be affected by the mortgages of which he had no notice, and therefore in determining his rights these papers cannot be treated as mortgages, but must, as to him, take only the rank of sealed claims.

Judgment modified.