### CARROLL *ET AL.* v. CASH MILLS *ET AL.*
### *IN RE.* SACO-LOWELL SHOPS *ET AL.*

#### (118 S. E., 290)

1. SALES—CREDITORS UNDER CONTRACTS EXECUTED AFTER CONDITIONAL SALE CONTRACT, BUT PRIOR TO DELIVERY, HELD NOT "SUBSEQUENT CREDITORS" WITHIN RECORDING ACT.—Where contracts for the purchase of machinery were made in September, 1919, under which vendors reserved title until payment of the purchase price, but no deliveries were made until May, 1920, creditors under contracts executed in March, 1920, were not subsequent creditors within Civ. Code, 1912, §§ 3542, 3740, providing that unrecorded conditional sales contracts are void as to subsequent creditors, the date of delivery being the day with reference to which the relation of subsequent creditor is determined.

2. SALES—GENERAL RECORDING ACT APPLICABLE TO ACT RELATING TO UNRECORDED CONTRACTS RESERVING TITLE TO VENDORS OR BAILORS.—The General Recording Act (Civ. Code, 1912, § 3542, as amended by Act February 28, 1914, [28 St. at Large, p. 482]), relating to the time, manner, and effect of recording, is applicable to Section 3740, relating to unrecorded contracts reserving title to vendors or bailors of personal property, in view of the history of these sections.

3. RECEIVERS—CONDITIONAL SALE CONTRACT RECORDED OUT OF TIME VALID AS AGAINST UNSECURED CREDITORS.—Under Civ. Code, 1912, § 3542, as amended by Act February 28, 1914 (28 St. at Large, p. 482]), and Section 3740, a conditional sale of personalty recorded after the ten-day limit and prior to receivership is valid as against all general unsecured creditors, who become such between the time of execution and the date of recording.

---

NOTE: On right of assignee or receiver, in behalf of general creditors, to complain of failure to record contract of conditional sale, see note in L. R. A. 1917C, 442.

As to conditional sale contract executed prior to, but filed within the four-months period as a voidable preference, see notes in 47 L. R. A. (N. S.), 1223, and 22 A. L. R., 1378.

On validity and effect of conditional sales contracts, see note in 13 A. L. R., 465.

4. BANKRUPTCY—CHATTEL MORTGAGES, RECORDED OUT OF TIME, VALID AS AGAINST GENERAL CREDITORS.—Under Civ. Code, 1912, § 3542, as amended by Act February 28, 1914 (28 St. at Large, p. 482), a chattel mortgage executed by a bankrupt in good faith for a present valuable consideration and not voidable as a preference, recorded after the ten-day limit, therein specified, but prior to bankruptcy, *held* valid as against all general creditors, including those who became such between the time of execution and recording of the mortgage.

5. MOTIONS—COURT'S ORDER APPOINTING RECEIVER NOT EFFECTIVE UNTIL FILED.—Where, on the same date that a contract was recorded, a receiver was appointed for one of the parties, but the Court's order was not filed until the following day, the recording antedated the appointment, as the order was not effective until filed.

6. RECEIVERS—HAVE NO GREATER INTEREST THAN DEBTOR POSSESSED.— A receiver is not a subsequent purchaser or creditor; he has no greater title or interest than debtor possessed.

7. ACKNOWLEDGMENT—PROBATE NOT INVALIDATED BY ABSENCE OF NOTARY'S SEAL.—Under Civ. Code, 1912, § 735, the fact that the affidavit attached to a conditional sale contract in proof of its execution was signed by the witness before a person, who signed his name as a notary public without a seal, does not invalidate the probate.

8. TIME—GENERAL RULE OF NOT COUNTING FRACTION OF DAY NOT APPLICABLE TO CONFLICTING RIGHTS DEPENDING ON PRIORITY IN FACT.— Where it is necessary to determine conflicting rights of rival claimants depending on priority in fact, the general rule of not counting fractions of a day will not be applied.

9. RECEIVERS—LIEN CREDITOR'S PRIORITY LIMITED TO PROPORTION OF VALUE OF INCUMBERED MACHINERY THAT NET SALE PROCEEDS OF ENTIRE PLANT BEARS TO ITS VALUE.—Where, prior to appointment of receiver, two creditors having a specific lien on insolvent's machinery consented to a sale of insolvent's entire plant, their lien should be limited to that proportion of the value of this machinery which the net proceeds of the sale bear to the value of the plant.

10. RECEIVERS—PROPERTY IN RECEIVER'S POSSESSION NOT SUBJECT TO ATTACHMENT.—A receiver's possession of property is regarded as the possession of the Court which appointed the receiver and being in *custodia legis* cannot be seized by attachment.

Before WILSON, J. CHEROKEE. Reversed and remanded.

Action for the appointment of a receiver, etc., by J. A. Carroll and others against the Cash Mills and others. In

the matter of the claims of the Saco-Lowell Shops, the Mason Machine Works, the Barber-Colman Company, Chas. L. O'Neale & Co., A. C. Walker, and Bean Bros. From the referee's report, confirmed, as modified, by the Circuit Court, the first three claimants named above appeal. Reversed and remanded.

*Mr. W. G. Sirrine for Barber-Colman Co.,* appellant cites : *Attachment for purchase money:* Code Proc. 1912, sec., 298. *Levy on funds in hands of Sheriff:* Drake Attach. Sec., 281 ; 1 A. & E. Enc. L., 916 ; 31 S. C., 36 ; 106 S. C., 384. *License to use machine could be terminated:* Wall, 544 ; U. S. Comp. St. Sec., 9444. *Recording acts:* 1 Civ. Code 1912, Sec. 3542, 3740 ; 28 Stat., 482. *Assignment of patent unrecorded is good between the parties:* Fed. Cas., 11196 ; 151 Fed., 64. *This was license not assignment:* 20 R. C. L. Sec., 67 ; 186 U. S., 70 ; 159 Mass., 448 ; 17 Fed., 536 ; 115 Fed., 332 ; 219 Fed., 237 ; 31 Am. Dec., 617. *Rights of licensee:* 9 Wall., 788 14 How., 193 ; 119 U. S., 369 ; 92 U. S., 724 ; 150 U. S., 193 ; 25 C. C. A., 280.

*Messrs. D. W. Robinson and D. W. Robinson, Jr., for Saco-Lowell Shops,* appellant, cite : *Whether a machine remains a chattel or becomes part of realty is largely matter of intention of the parties:* Burd. Real Prop., 26 ; 11 R. C. L., 1062, 1085 ; 95 S. C., 229 ; 100 S. C., 27 ; 33 S. C., 344 ; 14 S. C., 365 ; 13 A. & E. Enc. L. (2nd Ed.), 597. *Agreement determines character:* 1 Tiff. Real Prop. (2nd Ed.), 920, Sec. 271 ; 59 L. R. A. 280 ; Bronson Fixt. Sex., 28 ; 1 Minor Real Prop., 32. *Conditional sale or chattel mortgage indicates intention to treat chattel as personalty:* 13 A. & E. Enc. L. (2nd Ed.), 625 ; 11 R. C. L., 1064 ; 56 L. R. A., 557 ; 233 U. S., 717 ; 49 L. R. A. (N. S.), 403 ; 1 B. R. C., 691 ; 13 N. E., 830 ; 53 N. Y., 377 ; 14 Barb., 662 ; 63 S. E., 1071 ; 109 Va., 382. *Recording before filing order appointing Receiver was notice to purchaser:* 1 Tiff. Real Prop. (2d Ed.), 922, Sec., 271 ; 119 Ala., 98 ; 50 L. R. A., 279 ;

110 Ala., 242; 12 Me., 162; 13 A. L. R., 450; 1 B. R. C., 664; 7 B. R. C., 207; 49 L .R. A. (N. S.), 396; 262 Fed.; 754; 262 Fed., 756; 140 Mass., 21; 40 Mich., 693; 1 Ohio St., 511; 13 N. E., 493; 205 U. S., 340; 232 U. S., 637; 233 U. S., 712; 166 Pac., 37. *Recording in chattel mortgage book is notice to purchaser of realty:* 13 N. E., 832; 164 Pac., 775; 24 N. E., 811; 96 Am. Dec., 129; 62 Hun., 586; 63 S. E., 1071; 13 A. L. R., 484. *Conditional sale good:* 51 S. C., 31; 223 U. S., 717. *Executory contract is chose in action and need not be recorded:* 115 S. C., 257; 55 L. R. A., 155; 115 S. C., 430; Schauler Bail. (2nd Ed.), Sec., 188; 49 S. C., 457. *Subsequent creditors:* 21 S. C., 214; 13 A. L. R., 446; 232 U. S., 640; 75 S. C., 206. *Receiver in same position as mills:* 51 S. C., 443; 3 McC., 52; 1 Hill Ch., 172; 5 Strob.; 144; 47 L. R. A. (N. S.), 1223; 32 L. R. A., 44; 39 Ann. Cas. 1916-A., 1261; L. R. A. 1917-C, 444. *Recording laws:* 28 Stat., 482; 75 S. C., 201; 78 S. C., 300; 1 Civ. Code 1912, Sec. 3542, 3740; 26 Stat., 747; 27 Stat., 137; 87 S. C., 120; 23 S. C., 543; 272 Fed., 1003. *Measure of damages on cotton claims:* 78 S. C., 206; 106 S. C.,.379; 8 R. C. L., 421; 1 Suth., Dams. (3rd Ed.), Sec., 75; 6 Page Conts. Sec., 3183; 8 R. C. L., 454. *Illegal contracts:* 115 S. C., 15; 113 S. C., 21; 1 Suth. Dams (3rd Ed. ), Sec., 5; 98 S. C., 279; 3 Hill, 171; 2 Page Conts. Sec., 1103; 174 U. S., 654. *Where part is illegal:* 2 Suth Dams. (3rd Ed.), Sec., 550; 2 A. L. R., 211; 8 A. L. R., 309; 10 A. L. R., 1015; 81 S. E., 606; 4 A. L. R., 104; L. R. 11 Ch. Div., 197. *Cotton Futures:* 1 Civ. Code 1912, Sec. 3421, 3422; Crim. Code, 1912, Sec., 263; 98 S. C., 279; 98 S. C., 161; 115 S. C., 101; 223 Fed., 385; 222 Fed., 453; 6 R. C. L., 782; 104 S. C., 284; 107 S. C., 334. .

*Messrs. Martin & Blythe* for Mason Machine Works, appellant, cite: *Rights of vendor of machinery as against mortgagee of realty:* 19 Cyc., 1051; 65 S. E., 648; 134 A. S. R., 966; 18 Ann. Cas., 936; 103 C. C. A., 430; 37 L. R. A. (N. S.), 119; 13 A. L. R., 460; 32 S. C., 339. *Record-*

*ing:* 23 S. C., 543; 78 S. C., 294; 87 S. C., 116; 224 U. S., 262. *Illegal contracts:* 45 S. C., 344.

*Messrs. L. W. Perrin and Lyles & Drummond* for respondents, Chas. L. O'Neale & Co. et al., cite. *Cotton contracts valid:* 89 S. C., 555; 111 S. C., 511; 90 S. C., 186; 93 S. C., 357; 104 S. C., 280; 6 R. C. L., 783. *Measure of damages:* 88 S. C., 572; 113 S. C., 18.

*Messrs. Butler & Hall,* for the Receiver cite: *Contracts controlled by* 1 Civ. Code 1912, Sec., 3740. *Property in hands of Receiver not subject to attachment:* 3 En. L., 212; 4 Cyc., 569; 34 Cyc., 137; 11 S. C., 518. *Election of remedies:* 98 S. C., 400; 15 Cyc., 259.

April 12, 1923.   Rehearing refused July 5, 1923.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action instituted in the Court of common pleas for Cherokee County on January 3, 1921, by certain stockholders of Cash Mills, a corporation, against the corporation and its directors, alleging its insolvency and praying for the appointment of a receiver and the liquidation of its affairs.

An order was passed by the Hon. Edward McIver, Circuit Judge, dated January 4, 1921, and filed January 5, 1921, in the office of the Clerk of Court, appointing W. C. Hamrick temporary receiver.   On February 21, 1921, the temporary receivership was made permanent, by order of the Circuit Judge.

By a subsequent order dated July 6, 1921, special referees were appointed to take testimony and report upon claims presented against the corporation, their respective amounts and priorities if any.   In accordance with said order, notice was published calling in creditors, and references upon the claims presented were held.

The appeal involves the questions of the validity of certain claims and the priorities claimed by others, with particular reference to the claims of Saco-Lowell Shops, Mason

Machine Works, and Barber-Coleman Company, which will be designated and referred to as "machinery claims," and of Charles L. O'Neale & Co., A. C. Walker, and Bean Brothers, "cotton claims."

The special referees reported September 30, 1921, in favor of the validity of the cotton claims as follows:

Chas. L. O'Neale & Co. ...................... $47,201.55
A. C. Walker ........................... 12,295.00
Bean Bros. ...........ᴨ................. 83,430.00

—and in favor of the validity, but against the priority of the machinery claims, which were:

Saco-Lowell Shops ...................... $30,815.31
Mason Machine Works ................... 59,217.19
Barber-Colman Company ................ 4,000.00

—placing them all, machinery claims and cotton claims, upon the same plane of general unsecured creditors.

The matter came up before Hon. John S. Wilson, Circuit Judge, upon exceptions by the holders of the machinery claims to the report of the referees, on November 7, 1921; the case was argued and decision reserved. On November 10, 1921, Judge Wilson passed an order and decree, directing a sale of the property of the corporation by the receiver, on salesday in January, 1922, upon certain terms stated, and reserving for further consideration the issues made by the exceptions to the report of the referees. That order further provided that the property be sold free and discharged from all liens and incumbrances of creditors, which should be transferred to the proceeds of sale, held subject to the further orders of the Court. On November 26, 1921, Judge Wilson filed a decree in which he held: (1) That the claim of J. H. Curry, contractor, to whom the sum of $6,000 was due on contract, could not be allowed as a lien upon the property, upon the ground that he had failed to comply with the statute relating to mechanics' liens. (In passing we observe that there is nothing in the "case"

referring to this claim, and no exceptions involving this portion of the decree; it therefore passes out of consideration.) (2) That all exceptions to the report of the referees be overruled, except the exception filed by the receiver, and that it be sustained, as having been adjudicated by the order of sale made November 10, 1921. (There is no reference to this exception in the "case," and it too passes out of consideration.) (3) That the report of the referees, including the supplemental report, be confirmed and made the judgment of the Court. (There is no statement in the "case" of a supplemental report, and it passes out of consideration.)

From this decree, the holders of machinery claims have appealed to this Court, upon exceptions which fully raise the questions herein decided. The receiver did not appeal from any portion of the decree.

We will proceed to the consideration and determination of the questions presented in reference to the several claims, taking up in order the machinery claims, Saco-Lowell Shops, Mason Machine Works, and Barber-Colman Company, and the cotton claims, Chas. L. O'Neale & Co., A. C. Walker, and Bean Bros.

### MACHINERY CLAIMS

1. *Saco-Lowell Shops.* This company claims priority over the general creditors to the extent of $30,815.31, that being the balance claimed to be due them under the following circumstances: A written contract was entered into by and between this company and the corporation, and provided for the furnishing of certain machinery to the mill, aggregating $46,506.10. The contract is dated at Charlotte, N. C., September 15, 1919, and at Gaffney, S. C., September 19, 1919, accepted at Boston Mass., by the company on September 29, 1919. It provides for "delivery f. o. b. cars shop spring of 1920;" terms of payment, one-third net cash 30 days from average date of invoices, balance covered by two equal 6 months' notes, dated average date of invoices.

Machinery under the contract was delivered at various times, beginning the latter part of May, 1920, and continuing until January 7, 1921. The company in compliance with the contract, furnished mechanics to erect and install the machinery, who were thus engaged practically up to January 1, 1921. The last machinery was shipped January 7, 1921; it did not require skilled mechanics to adjust.

The contract contained the following provisions relating to reservation of title, and to the right to remove the machinery in the event of nonpayment:

"The title .to the machinery delivered under this contract shall not pass from the Saco-Lowell Shops (hereinafter called the company), until all payments hereunder (including checks, drafts, deferred payments, and notes and renewals thereof, if any) shall have been fully made in cash. Until such full cash settlement is made, the purchaser agrees to keep the machinery in repair and fully insured for the benefit of the company as interests may appear.

"In case of breach of this contract, it is understood that the company or its agents may enter peaceably and remove the articles from the custody of the purchaser, wherever they may be, and that the purchaser herewith agrees to do all acts necessary to perfect and assure such retention of title in the company as above contemplated."

The contract was duly recorded, both in the real estate book, and in the chattel mortgage book, in the office of the Register of Mesne Conveyances of Cherokee County, where the mill was located, on January 4, 1921, the day the order appointing a receiver was signed, and the day before it was filed in the clerk's office.

The account was closed by certain payments and the execution of two notes for the balance, both dated July 19, 1920, and each for $15,011 due 6 months after date. The amount due the company as of the date of the report of the referees was conceded to be $30,815.31. It is not clear to

the Court how this figure is arrived at; but the notes being in evidence any error may be corrected.

The contest is really between the holders of the machinery claims and the holders of the cotton claims; the receiver is only interested in behalf of such creditors as are not parties to this action, it being immaterial to the stockholders how the issue may turn. The point of attrition between the holders of the machinery claims and the holders of the cotton claims is this:

The Saco-Lowell people contend that they are the holders of what is practically (and which will be considered) a chattel mortgage upon the machinery installed by them, and which, although not recorded within the 10 days required by Section 3740, Vol. 1, Code of Laws, A. D. 1912, is valid against the cotton claims, the holders of which are not subsequent creditors of the corporation.

The holders of the cotton claims contend (in which contention the receiver joins) that they are subsequent creditors, and as such entitled to protection under such section.

A decision of this issue is therefore of prime importance.

It appears that, while the contract was made in September, 1919, it contemplated deliveries in the "spring of 1920," and that the first deliveries were made in the latter part of May, 1920. It is clear that the lien of Saco-Lowell Shops was not consummated until such delivery and attached as each delivery was thereafter made. The claim of Charles L. O'Neale & Co. (cotton claim) for $47,201.55 arose out of a contract for the purchase of 600 bales of cotton, dated March 8, 1920; the claim of A. C. Walker for $12,295, out of a contract for the purchase of 150 bales of cotton, dated March 20, 1920; and the claim of Bean Bros. for $83,430, dated March 12, 1920. None of them could therefore have contracted with the mill upon the faith and credit of machinery subsequently installed, which is the foundation of the statute.

Both Section 3542, which is general and comprehensive in its scope and embraces "all instruments in writing now required by law to be recorded," and Section 3740, which particularly relates to agreements "between the vendor and vendee, bailor or bailee of personal property," are intended to protect subsequent creditors. Except as to subsequent creditors, these contracts are perfectly valid.

The whole purpose of the recording acts is to prevent secret liens, to protect *bona fide* purchasers for value and subsequent creditors, who have relied on the apparent possession of the vendee, to purchase from him or to extend credit to him. When the vendor has thus led the purchaser or subsequent creditor to rely on the apparent title of the vendee, he is estopped from setting up his title in derogation of their rights. He still has the title, but, as against these classes of persons who have been misled by his conduct, the Court says he should not be allowed to show title. In such retention of title agreement, the vendor retains the title to the goods until payment, and can only lose his right to set it up by his conduct in allowing others to think that the vendee has title. In the present case there is no ground for such an estoppel; the creditors extended credit to the vendee before he came into possession of the goods. They did not rely on this machinery in extending credit, for it had not been delivered at the time of the credit; the only way the creditors could have known of the intended delivery of the machinery was through a knowledge of the contract to deliver, and such contract would have given them knowledge of the retention of title by the vendor, thus making them creditors with notice and not within the terms of the statute.

Are the cotton creditors, who are the largest creditors in this case, such subsequent creditors as the recording statutes protect? The date of their contracts was March, 1920. The date of the conditional sale contract of Saco-Lowell Shops is September, 1919. But at that time this contract was no more than a chose in action, or executory

contract, and, in its then state or condition, need not have been recorded.

Until the machinery had been delivered, it was in the power of either party to recall the order or stop performance. Of course, the party who broke the contract would be liable in damages for such breach. *Oxweld Acetylene Co. v. Davis*, 115 S. C., 430; 106 S. E., 157.

The real date, with reference to which the relation of subsequent creditor is to be determined, is when the machinery was delivered under and in accordance with the contract; that is to say, when it was delivered at the mill and set up in the mill. Until that time there was no "agreement between the vendor and vendee, bailor or bailee of personal property," within the language or meaning of Section 3740 of the Code.

Schouler on Bailments and Carriers (2d Ed.) § 188, says:

"Until an actual transfer of possession has taken place, there is, to speak with precision, no pledge, no bailment; but instead, an executory pledge contract upon sufficient consideration, which each may hold the other bound to perform. Damages for non-performance will be awarded the aggrieved party who sues as for breach of contract; or perhaps equity would decree a specific performance."

And at Section 189:

"Delivery, in order to be effectual, should be followed by an acceptance of possession; and methods of delivery and acceptance differ according to the subject matter and the local situation of the thing."

The word "bailee" is only used with reference to one actually in possession of the goods. So, in order for the creditor to be subsequent as to a bailee, he would have to be subsequent to delivery. "Bailee" is never used in reference to an executory contract of bailment. The party is not a bailee until the goods are in his possession. It must follow that the only possible construction is to say "subsequent" means subsequent to delivery; there could be no subsequent creditors

as to a bailee prior to possession, for there was no bailment and no bailee prior to delivery.

It would have been useless to have recorded this contract at the time it was entered into, for the machinery was not then manufactured. It was manufactured in a distant state and shipped to South Carolina. There could be no effect to be given to the conditional sale agreement, so far as protecting anybody in this State was concerned, until delivery of the machinery. No one could have extended credit on the faith of its possession unless: (1) They either saw the machinery itself, or (2) saw the contract for it. They could not see the machinery before it was delivered to the mill; the first shipment of it was in May, 1920, several months after the cotton contracts were made. The remainder followed from that day until January, 1921; and, in accordance with the conditional sale contract, the installation and erection of it commenced in October, 1920, and continued to the end of December.

A "subsequent creditor," within the protection of the recording statutes, necessarily means one who might reasonably have extended credit on the faith of ostensible ownership from possession, without notice of anything impairing or detracting from such ownership. *Herring v. Cannon,* 21 S. C. 214, 215; 53 Am. Rep., 661, and cases. *Beatrice Creamery Co. v. Sylvester,* 65 Colo., 569; 179 Pac., 154; 13 A. L. R. 446, 447, and note at page 465, and cases.

In the case of *Herring v. Cannon,* 21 S. C., 214; 53 Am. Rep., 661, the Court says:

Conditional sales of personal property delivered, annexing a secret condition to a visible transaction appearing to the world unconditional, gave rise, for many years, to much discussion and some difference of opinion in our Courts. It may be safely stated that there was a general concurrence that such contracts might be enforced between the parties who made them; but, as possession is *prima facie* evidence of title in relation to personal property, there were obvious

difficulties as soon as they touched the rights of subsequent
creditors and *bona fide* purchasers, who dealt with the appar-
ent owner on the faith of title, springing from his unex-
plained possession."

In the case of *Holt v. Henley,* 232 U. S., 640; 34 Sup. Ct.,
459; 58 L. Ed., 767, there was a contract between the mort-
gagee of the realty and the holder of a reservation-of-title
contract, affecting a sprinkling system installed in the mill
after the mortgage was executed. The Court says:

"But the foundation upon which all their rights depend
is the Virginia statute giving priority to purchasers for value
without notice over Holt's unrecorded reservation of title;
and as the mortgage deed was executed before the sprinkler
system was put in, and the mortgagees made no advance on
the faith of it, they were not purchasers for value as against
Holt."

The point of the matter is that the creditor who has ex-
tended credit to the debtor, upon the basis of his possession
at the time, has suffered no prejudice by the subsequent ac-
quisition of property subject to an undisclosed lien. As the
Court declares in the *Holt v. Henley Case, supra:*

"The mortgagees have no equity and do not bring them-
selves within the statutory provision. We believe the better
rule in a case like this, * * * is that 'the mortgagees take just
such an interest in the property as the mortgagor [purchaser]
acquired; no more, no less.' "

So in *McFarland v. Farmer,* 42 N. H., 386 it was held that
creditors of a conditional vendee can get no greater right in
the property sold than he himself has. To the same effect
are: *Thornton v. Cook,* 97 Ala., 630; 12 South, 403. *Strong
v Taylor,* 2 Hill (N. Y.), 326. *Piser v. Stearns,* 1 Hilt.
(N. Y.), 86. *Goodell v. Fairbrother,* 12 R. I., 233; 34 Am.
Rep., 631. *Steen v. Harris,* 81 Ga., 206; 8 S. E., 206.
*Hughes v. Kelley,* 40 Conn., 148. *McIver v. William-
son,* 19 Okl., 454; 92 Pac., 170; 13 L. R. A. (N. S.),
696. *Hawthorne v. Bowman,* 3 Sneed (Tenn.),

524.  *Cole v. Berry,* 42 N. J. Law, 308; 36 Am. Rep., 511.  *Aultman v. Berry,* 5 Neb., 178; 25 Am. Rep., 478.  *Bank v. Tufts,* 63 Tex., 113.  *Leath v. Uttley,* 66 Tex., 82; 17 S. W., 401.  *Tufts v. Cleveland* (Tex. Sup.), 3 S. W. 288.

It appears beyond question therefore, that the holders of the cotton claims are not subsequent creditors within the protection of the statutes in reference to recording.  If that be true, so far as Section 3740, which extends protection to subsequent cerditors only, is concerned, it is a matter of no consequence whether the chattel mortgage was recorded in time or not, or whether it was recorded at all.  It was perfectly valid as between mortgagor and mortgagee, and equally so as between prior creditors and mortgagee.

It will be seen from the array of authorities cited by the writer of this opinion in the case of *Ex parte American Slicing Machine Co., In re Lipscomb-Russell Co. v. Hobbs-Henderson Co.,* 118 S. E., 303, at this moment in process of decision, that the appointment of a receiver works no metamorphosis in the title or interest to or in the assets of the insolvent; that the receiver takes possession of them as the arm of the Court, subject to all existing liens and incumbrances, to be administered under the direction of the Court, having due regard to the legal and equitable rights of the parties and those stockholders and creditors represented by the receiver.

The report of the referees, confirmed by the Circuit decree, contains a finding that the cotton claims were subsequent and not prior to the machinery claims; to which exception has been duly made by the holders of the machinery claims.  This issue has already been disposed of. The holders of the machinery claims go further and say that, assuming for the argument's sake, the cotton claims were subsequent and not prior to the machinery claims, by force of the amendment of 1914 to Section 3542 (28 St. at Large, p. 482), which by implication amends also Section 3740; their

mortgages, although recorded out of time, have precedence of the unsecured creditors whose claims may have arisen between the dates of the execution of the mortgages and their record.

The consideration of this position taken by the holders of the machinery claims involves a determination of two questions:

1. Does the amendment of 1914 to Section 3542 also amend Section 3740?

2. If so, what is the effect of Section 3740, as thus amended, upon the relative rights of the subsequent creditors and the holders of the mortgages recorded out of time?

*As to the first question:* Section 3740, commonly referred to as the Bailment Act, prior to an amendment in 1910, and at the time of the decisions in the case of *Armour v. Ross,* 75 S. C., 201; 55 S. E., 315, and 78 S. C., 294; 58 S. E., 941; 1135 (A. D. 1906, 1907), stood as follows (the blank space being left to locate the interpolation of the amendment of 1910):

"Every agreement between the vendor and vendee, bailor and bailee, of personal property, whereof the vendor or bailor shall reserve to himself any interest in the same, shall be null and void as to subsequent creditors (    ) or purchasers for valuable consideration without notice, unless the same be reduced to writing and recorded in the manner now provided by law for the recording of mortgages." (An exception not relevant to this issue follows.)

In 1907 the second appeal in the *Armour v. Ross* Case was decided, and, by the judgment of this Court on that appeal, it was held that the Section (3740), as it then stood, had no reference to simple or unsecured creditors, but to those whose claims had been reduced to judgment or to those holding other liens on the property before receiving notice of the unrecorded incumbrance; in other words, only subsequent "lien creditors" were protected by the Statute.

Thereafter, in 1910, 26 Stat. 747, the General Assembly passed an Act amending the Section (then 2655) by inserting, in the blank space above indicated, the words "whether lien creditors or simple contract creditors."

In 1911, 27 Stat., 137, the section was further amended by adding to the exceptions the words "or as a pledge or collateral to a loan"—a matter irrelevant to the present issue.

The General Recording Act, § 3542, as it now stands with the amendment of 1914, is as follows (omitting irrelevant portions) :

"All deeds * * * or instruments in writing, conveying either real or personal estate * * * or charging or incumbering the same, all mortgages or instruments in writing in the nature of a mortgage of any property, real or personal * * * and, generally, all instruments in writing now required by law to be recorded * * * shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) or purchasers for valuable consideration without notice, only when recorded within ten days from the time of such delivery or execution: * * * Provided, nevertheless, that the recording and record of the above named deeds and instruments of writing subsequent to the expiration of said ten days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deeds or instruments of writing had been executed and delivered on the date of the record thereof."

The proviso set forth at the end of the Section represents the amendment of 1914, which the holders of the cotton claims contend is not applicable to Section 3740. They contend that there is a material difference between the two Sections, and that, if the General Assembly intended the amendment to apply to both sections, they would have said so. The material difference suggested is that under 3740 an instrument of the kind there described is absolutely void

as to subsequent lien or simple contract creditors, unless it be recorded "in the manner (not time) now provided by law for the recording of mortgages;" whilst under 3542, admittedly inclusive of the same kinds of instruments referred to in 3740, the instrument is not void if recorded beyond the time required, but from that date has the same effect as if executed on the day of record; a privilege not accorded by Section 3740 and denied practically by it.

It must be conceded that if such an instrument as described in Section 3740, should be recorded within the time fixed by Section 3542, to which reference must be made for the time, the effect would be that provided for in that section, namely, it would have reference to the date of execution and precede liens or debts created within that period, though there is no such provision in 3740.

Section 3542, in its description of the instruments required to be recorded, is as comprehensive as it possibly could be made: An instrument "charging or incumbering" personal property; "instruments in writing in the nature of a mortgage;" "instruments now required by law to be recorded;" and unquestionably includes the reservation of title contract in the present case. It is full and specific as to the privileges granted to the holders of such a paper; those privileges should not be denied by another section, which must be construed *pari passu,* in the absence of evidence of a specific purpose to that effect.

The real purpose of Section 3740 was to render it absolutely certain that agreements of the kind there described should come within the secret liens that must be recorded; and that reference should be had to the General Recording Act for the time, manner, and effect of such recording. This is clear from the exception or proviso, excluding certain classes of bailments from the operation of the Statute. It was not intended as a recording Statute, as plainly appears from the reference to recording "in the manner now provided by law for the recording of mortgages." Section 3542

provides for two modes of recording and their respective effects: Recording within 10 days, and recording thereafter. The "manner" of recording is referable to either.

There is no reason for making a distinction between the agreements described in 3740 and other instruments of like character; and the general provisions of 3542 indicate most strongly that no distinction was intended to be made. In the interest of harmonious regulations and the obligation to construe the two sections so that both may stand, the ruling of the Court is that the regulations of Section 3542 as to the time, manner, and effect of the recording Act, apply equally to Section 3740.

*As to the second question:* The conclusion of the Court is that, under Section 3542, applicable to Section 3740, a valid reservation of title contract (equivalent to a chattel mortgage), recorded after the 10-day limit, and prior to receivership, is valid as against all general unsecured creditors who become such between the time of the execution and the date of recording such instruments.

It would be a work of supererogation, after the very able and entirely satisfactory decree of Judge Connor, United States District Judge, in the case of *In re Saunders & Co.,* 272 Fed., 1003, to review the legislative history of Section 3542, or to reinforce his logic and conclusions. His decree is adopted as a part of this opinion.

## DECREE OF JUDGE CONNOR

On January 7, 1920, the Farmers' & Merchants' Bank of Marion, S. C., filed its claim, or petition, in this Court, containing the following allegations which are found by the Special Master to be true:

That on July 15, 1919, the bank advanced and loaned to F. H. Saunders & Co., at Marion, S. C., $10,000, for which amount the said Saunders & Co. executed their promissory note, due and payable 60 days after date, and on the same day, and contemporaneous with the execution of said note,

and as security for the payment thereof, executed and delivered to said bank a mortgage on "all leaf tobacco purchased, and to be purchased, by us during the season of 1919 on the Marion, S. C., market, and on all drafts drawn against shipments of same and on all the proceeds arising from the sale thereof."

The mortgage was admitted to probate on the 29th day of July, 1919, and registered in Book 33, Page 487, in the office of the Clerk of the Court of Common Pleas of Marion County. On the 6th day of September, 1919, a petition for adjudication in bankruptcy was filed against said F. H. Saunders & Co. in the District Court of the United States for the Eastern District of North Carolina, and on the 4th day of October, 1919, they were adjudged bankrupts, and the trustees duly elected and qualified.

On the 28th day of August, 1919, said F. H. Saunders & Co. had to their credit in the bank the sum of $1,938.34, which was credited on said note and the account balanced. There remained due and unpaid on said note, after crediting same with said amount $8,061.66. The bank on the——day of August, 1919, seized and sold "certain leaf tobacco purchased by F. H. Saunders & Co., at Marion, S. C. and located in the respective warehouses at Marion, S. C., and at the depot of the Atlantic Coast Line Railroad Company for the sum of $9,125, covered by said mortgage."

After paying the cost incurred in seizing and selling said tobacco, including an attorney's fee of $350, and applying the balance of the proceeds of the sale of said tobacco to the discharge of the balance due on said note, the sum of $559.78 remained in the possession of said bank. On January 10, 1920, the bank filed its claim setting forth the foregoing facts.

The trustees of F. H. Saunders & Co., bankrupts, on April 20, 1920, in due time filed objections to the claim of said bank, insisting that the mortgage did not constitute a valid lien on said tobacco, and that the bank was not en-

titled to hold the proceeds thereof, or apply same to the payment of said note, for that: (1) The mortgage constituted a voidable preference under the provisions of Section 60b and Section 67e of the Bankruptcy Act. (Comp. St. §§ 9644, 9651); (2) that the said mortgage did not, at the date of the filing of the petition herein, September 6, 1919, or at the date of the adjudication, October 4, 1919, constitute a valid lien on said tobacco, because it was not registered within 10 days after the execution or delivery thereof, as required by the Statute of South Carolina relating to the registration of mortgages. The bank filed its answer to the objections of the trustees.

Pursuant to the request of the creditors of F. H. Saunders & Co., the Court made an order of reference to F. H. Bryan, Esq., Special Master, to hear the objections to the claim of the bank and report his conclusions thereon to the Court. The Special Master, after hearing the testimony, filed his report September 29, 1920, whereupon the cause was heard upon the said report at Wilmington, N. C., on November 20, 1920

In addition to the foregoing facts the Special Master found: "That the loan was made by the bank to F. H. Saunders & Co. in good faith and without knowledge or reason to believe the existence of the insolvency of the said F. H. Saunders & Co." That on July 29, 1920, the date of the registration of the mortgage, the bank had no knowledge, or reasonable cause to believe, that said Saunders & Co. were insolvent. That there was no fraud, nor collusion, connected with the transaction. That the proceeds of the note were actually advanced and placed to the credit of Saunders & Co. and drawn out by checks for the purchase of tobacco.

The Special Master dealt with the questions presented upon the record in the following order:

(1) Is the said claim of the Merchants' & Farmers' Bank a voidable preference, under the provisions of Section 60b. amendment of 1910?

The Special Master found that, at the date of the execution and of the registration of the mortgage, July 29, 1919, the bank had no reasonable cause to believe that F. H. Saunders & Co. were insolvent. This constitutes the test of a voidable preference under the provisions of the amendment of 1910 to Section 60b of the Bankruptcy Act. I find nothing in the evidence to show the existence of such reasonable ground to believe that the mortgagor was insolvent, or that the effect of the mortgage would be to give a preference.

(2) Is the mortgage a voidable preference under the provisions of Section 67d?

It is manifest that the execution of the mortgage was based upon a present consideration, was made in good faith and not in contemplation of, or in fraud of, the act, thus coming clearly within the protective provisions of the subdivision "d," § 67.

(3) The third question presented upon the record involves the construction of the registration laws of South Carolina. The question is not free from difficulty.

The Marion National Bank loaned money to, and thereby became a simple contract creditor of, F. H. Saunders & Co., subsequent to the execution, and prior to the registration, of the mortgage to the Farmers' & Merchants' Bank, and, at the date of the adjudication in bankruptcy of Saunders & Co., said bankrupts were, and are now, indebted to said Marion National Bank on account of such loan. The bank had no knowledge or notice of the execution of the mortgage at the time of making said loan, nor until its registration.

C. M. Jones, of Marion, S. C., also made advances to Saunders & Co., between the date of the execution and the date of the registration of said mortgage, without notice thereof. No lien was acquired by either of said simple contract creditors upon the property of Saunders & Co., prior to the registration of the mortgage or their adjudication in bankruptcy. They have proven their debts as simple con-

tract creditors. It does not appear that any other liens attached to the property of the bankrupts, covered by the mortgage, prior to the registration thereof, or to the adjudication of the bankrupts.

For the purpose of fixing the status of the Farmers' & Merchants' Bank and the trustees, who represent and may enforce all of the rights of the creditors against the property of the bankrupts, reference must be made to the provisions of Section 70a of the Bankruptcy Act (Comp. St. § 9654). Collier on Bankruptcy (11th Ed.) 1106.

"The trustee of the estate of a bankrupt upon his appointment and qualification *.* * shall * * * be vested by operation of law with the title of the bankrupt, as of the date he was adjudged a bankrupt."

While not affecting the question presented here, it will be noted that in *Everett v. Judson,* 228 U. S., 474; 33 Sup. Ct.. 568; 57 L. Ed. 927; 46 L. R. A. (N. S.) 154, Mr. Justice Day says:

"There are other provisions of the Statute which, we think, evidence the intention to vest in the trustee the title to such property as it was at the time of the filing of the petition"— citing *Acme Harvester Co. v. Beekman Lumber Co.,* 222 U. S., 300; 32 Sup. Ct., 96; 56 L. Ed., 208.

It is further said by Judge Day:

"Section 70a vests all the property in the trustee, which, prior to the filing of the petition, the bankrupt could by any means have transferred, or which might have been levied upon and sold under judicial process against him."

The Courts have uniformly held that the title to the property of the bankrupt vested, by operation of law, in the trustees, subject to all liens which had, prior to the date of filing the petition, attached thereto. The right of the creditors to attack such liens for fraud or other invalidating element vested in the trustee. *Hewit v. Berlin Machine Co.,* 194 U. S., 296; 24 Sup. Ct., 690; 48 L. Ed., 986. For that purpose Section 70e provides that "the trustee may avoid any trans-

fer by the bankrupt of his property which any creditor of such bankrupt might have avoided." Scetion 67a provides that "claims which, for want of record, * * * would not have been valid liens as against the claims of the creditors of the bankrupt shall not be liens against his estate," and the trustee may maintain such action for the recovery of such property as a creditor holding a lien thereon could have maintained. The question to be solved, therefore, is whether the mortgage held by the bank, at the date of the filing of the petition or adjudication of Saunders & Co., bankrupts, constituted a valid lien upon the tobacco seized by the bank as against the simple contract creditors of Saunders & Co.

The answer to this question depends upon the construction to be given to the registration law of South Carolina, at the date of the execution and registration of the mortgage. No authoritative decision of the Supreme Court of South Carolina is cited, and it is conceded none may be found, rendered since the statute was amended by the act of 1914 (Laws 1914, p. 482), and as it existed at the date of the mortgage. I have examined the cases decided by the Court which have, or are supposed to have, any bearing upon the question.

It is conceded that, whatever the law may have been in regard to the registration of mortgages and its effect upon the rights of creditors, prior to the Act of 1843 (11 St. at Large, p., 256), it was at that time enacted in express terms:

"That a mortgage is invalid as against subsequent creditors for valuable consideration, unless the same shall be recorded in the office of the Register of Mesne Conveyances within sixty days after execution."

In *Piester v. Piester,* 22 S. C., 139; 53 Am. Rep., 711, it appeared that Piester executed a mortgage to secure a valid obligation, November, 1869, and a second mortgage December 21, 1869. The mortgages were not recorded until August, 1872. The mortgagor became indebted to one Wright, April 7, 1871, who had no notice of the existence of the mortgages. The mortgagor died and the question was pre-

sented in the settlement of his estate whether the mortgage was a valid lien as against Wright. For the present purpose it is sufficient to find that under the provisions of the Act of 1843, it was held that "if these mortgages had been recorded before Wright's note arose, though later than 60 days after execution, this would have constituted constructive notice. But this was not the case, and as the act declares them 'invalid,' so as to affect the rights of one in Wright's position, it seems impossible to escape the conclusion that these mortgages cannot affect Wright's claim as to the estate of the debtor therein conveyed." Other questions were presented and discussed, none of which are material to the decision of the instant case.

The Legislature, at its session of 1876 (16 St. at Large, p., 92), re-enacted, so far as the Statute affects the rights of the parties in this case, the Act of 1843, fixing the time within which the mortgage was required to be registered at 40 days, and providing that mortgages registered within 40 days after execution and delivery 'shall be valid, so as to affect from the time of such delivery or execution the rights of subsequent creditors. * * * Provided, nevertheless, that the above-mentioned deeds or instruments in writing, if recorded subsequent to the expiration of said period of forty days, shall be valid to affect the rights of subsequent creditors and purchasers for valuable consideration, without notice, only from the date of such registration."

At the April term, 1885, and while the Act of 1876 was in effect, the case of *King v. Fraser* was before the Court. 23 S. C., 543. It appeared from the report of the Master that one Doar held a mortgage on certain property, executed in February, 1877, and recorded January 7, 1879. Between these dates the mortgagor became indebted to other persons, who were, at the date of the registration of the mortgage general creditors, without notice of Doar's mortgage until its registration. The controversy arose as to the rights of Doar under his mortgage, and the subsequent general creditors of the mortgagor, in respect to the distribution of

the proceeds of the sale of the property mortgaged. The Master, to whom the cause was referred, filed an elaborate and able report. Referring to the Act of 1843 as a new departure in the registration laws of the state, he said: "It is evidently a well-considered effort to deal effectively with the whole subject of registration."

The Master was of the opinion that the mortgage held by Doar, not having been recorded within 40 days after its execution, as required by the Act, was not a valid lien as against creditors of the mortgagor whose debts were contracted between the date of its execution and its registration. Hudson, Circuit Judge, overruled the exceptions in this respect and confirmed the report of the Master. Upon appeal, Mr. Justice McGowan said the question was: "Whether the omission on the part of the executors of Doar to put their mortgage on record within 40 days after its execution, although recorded afterwards and before the commencement of this suit, made it absolutely invalid as to all debts of the mortgagor contracted between its execution and registry; that is to say, whether a mortgage recorded, after the time prescribed by law, has a lien, as of that date, with the ordinary incidents of a lien, as to all debts which at that time are unsecured or shorn of these incidents, as to that class of debts which were contracted between the execution and the delivery thereof. This is a new question in this State, the precise point, so far as we know, never having arisen before; and it is certainly one not free from difficulty, arising principally from the terms of the general registration Act of 1876."

The learned Justice entered upon the discussion of the subject by expressing his concurrence with the statement that "there is no subject upon which our law has been more confused and obscure than that of registry, both as to the effect of omission to record and of recording within, as well as after, the time prescribed by law."

He said: The Act of 1876, after prescribing that mortgages " 'shall be valid so as to affect, from the date of such

delivery or execution, the rights of subsequent creditors
*   *   *   without notice, only when recorded within 40
days from the time of such delivery or execution:   *   *   *
Provided, nevertheless, that the above-mentioned deeds
or instruments in writing, if recorded subsequent to the
expiration of said period of 40 days, shall be valid to af-
fect the rights of subsequent creditors and purchasers for
valuable consideration without notice, only from the date
of such recod.'   If this section were to be considered with-
out reference to the proviso there would be little difficulty.
Ignoring the proviso, it is clear that the body of the section
declares that, without recording, none of the instruments
referred to would be valid as to any debts 'without notice,'
whether contracted before or after the date of the instru-
ment in question; but it goes on to provide that, if recorded
within the time prescribed, said instrument shall be valid
even as to 'all subsequent creditors, without notice' reaching
back to the time of the delivery of the instrument.   Without
the proviso the section would be substantially the same as
the Act of 1843 in reference to mortgages, which was
several times before this Court.   *   *   *   But the addi-
tion of the proviso in the Act of 1876 makes a very material
change in the law, applying to the registry of mortgages
substantially the same rules which were declared" to be ap-
plicable "to the registry of absolute conveyances in *Steele
v. Mansell,* 6 Rich., 438.   *   *   *   There cannot be
the least doubt that this proviso was intended to give to a
mortgage, though recorded out of time, some 'effect' upon
the class of creditors indicated; not, however, to reach back
to the date of the mortgage, as in the case of one recorded
within time, but only from the time of recording."

The learned Justice disposes of the question so far as it
relates to liens acquired before the registration, after the
expiration of the time limit, saying:   "Of course the lien
so acquired has priority over the mortgage.   So far   *   *   *
there is no difficulty, but the matter is not so plain as

to what is the effect of a mortgage recorded after the time upon general debts contracted after its execution without notice, and which are found in the condition of unsecured debts at the time the mortgage is recorded and its lien attaches. It is certainly the general rule that a *bona fide* lien, no matter when entered, from that time forth has priority over all debts which are then unsecured, without the least regard to their date."

After stating the contention made by the "subsequent creditors," whose debts were contracted after the date of the mortgage, and before its registration, Judge McGowan says: "For several reasons we hesitate to accept this view. In order to reach a satisfactory conclusion on the point, it is necessarry first to settle clearly who are the persons meant by 'subsequent creditors and purchasers, without notice.'"

He concludes that the words "subsequent creditors" refer to those whose debts were contracted subsequent to the execution of the mortgage. The same phrase found in the proviso, he says, has reference to the same class of creditors, and not to those whose debts were contracted subsequent to the recording. "This being clearly settled, it would seem that the terms of the proviso itself negative the idea that a mortgage registered out of time is absolutely null and void as to all debts contracted between the execution and registry thereof, for it declares in express terms that such mortgage so registered 'shall be valid so as to affect the rights of subsequent creditors,' etc. It seems to us that there could never have been a doubt upon the subject, but for the last clause in the proviso, which makes the ambiguous declaration that such effect shall be 'only from the date of such record,' which, it is contended, limits the lien of the mortgage after registry to future debts, leaving the rights of the class of prior creditors before described entirely unaffected as they existed before registry."

After stating his reasons for rejecting this construction of the proviso, Judge McGowan says: "Considering the

subject-matter and the context, we cannot doubt that the phrase 'from the date of such record' was intended, not to fix that as the point from which the lien of the mortgage was to operate forwards, but simply to indicate the time at which it received vitality, or, in other words, that the registry fixed the time at which the mortgage becomes a lien, but not the date of the debts which, as such, it might affect, according to the condition, as to being secured or unsecured, in which they were found at the time.   *   *   *   To say that a mortgage shall be valid means, of course, valid as a mortgage; that is to say, a lien upon specific property, with the ordinary incidents of such lien, one of which is priority as to that particular property over all other debts of the mortgagor which have not prior to that time ripened into a lien."

In conclusion he says: "We can conceive of no effect of recording other than the putting an end to the exemption which arose from want of notice, and continued until notice was given by that recording, that the registry giving them notice at the same moment gives vitality to the mortgage as a lien with priority, as if the old mortgage had never existed and a new one had been executed and recorded on that day, the exemption arising from want of notice ceasing to exist as soon as notice is given"—quoting with approval the language of Judge Wardlaw in *Steele v. Mansell:* "Being without registration good as to the party who made it, the deed might, as to all other persons, be considered as if it had been executed on the day it was registered; in other words, as if it had been executed and acknowledged on that day.  By delaying beyond a prescribed time, the grantee in a deed (or a mortgagee) has lost the right to insist that the tardy registration shall have relation to the date of the deed so as to provide against intervening claims; but why should he lose the benefit of registration from the day it was made?"

Judge McGowan reached the conclusion that "the Doar mortgage, although recorded out of time, from that date became valid as a lien, and as such had priority over all the general debts of the mortgagor which had not then become liens, regardless of the time they were contracted as prior or subsequent." Mr. Justice McIver dissented from this conclusion. A petition to rehear was denied.

There would seem to be no room for doubt that, unless this decision has been reversed, or the statute so amended as to work a change in the law, the mortgage held by the Farmers' & Merchants' Bank, although recorded out of time, is a valid lien from the date of its registration, as against general creditors of the mortgagor whose debts were contracted between the date of its execution and registration, and in respect to which no liens had attached prior to the registration of the mortgage.

At the Session of 1898 (Laws 1898, p. 746) the Legislature re-enacted the Act of 1876, whereby all mortgages are declared to "be valid, so as to affect from the time of their delivery or execution the rights of subsequent creditors (whether lien creditors or simple contract creditors) * * * without notice, only when recorded within forty days from the time of such delivery or execution," etc. "Provided, nevertheless, that the recording or record of the above mentioned deeds or instruments of writing subsequent to the expiration of said forty days shall from the date of such record operate as notice to all who may subsequently thereto become creditors or purchasers."

By the Act of 1909 (Laws 1909, p. 189) the time within which mortgages were required to be recorded was changed from 40 to 10 days. It will be noted that the words "whether lien creditors or simple contract creditors" are inserted in the amended act, and the record of the mortgage out of time is made by the proviso of 1898 "from the date of such record" to "operate as notice to all who may subsequently thereto become creditors." This

change in the language of the proviso becomes of interest, in view of the decision of the Court in *Brown v. Sartor* (1910) 87 S. C., 116; 69 S. E., 88.

In that case the plaintiff brought suit to foreclose a mortgage executed by defendant on May 1, 1905, and recorded May 2, 1905. The defendants, other than the mortgagor, held liens on the property subordinate to plaintiff's mortgage, as follows: Thomas Barrett and others, trustees, mortgage executed October 6, 1905, and recorded January 6, 1908. Gist and others, receivers, mortgage April 18, 1907, and recorded November 27, 1907. Merchants' National Bank of Richmond held a judgment rendered May 28, 1909, subsequent to the registration of both mortgages, upon debts contracted subsequent to the execution of both mortgages. The Union Building & Loan Associatoin held a judgment of September 19, 1908. T. W. Norwood held notes against the common debtor contracted subsequent to the execution of the two mortgages held by Barrett and Gist, which were not reduced to judgment. He had no notice of the mortgage at the time his debts were contracted. Plaintiff's mortgage was paid from the proceeds of the sale of the property. Mr. Justice Woods thus states the contention of the parties:

"All agree that neither the mortgage held by Barrett and others, as trustees, nor the mortgage held by Gist and others, as receivers, can have any preference over the Merchants' Bank of Richmond or J. W. Norwood, for the reason that the mortgages were not recorded within the time required by the statute, and the Merchants' Bank and Norwood became creditors * * * without notice of these mortgages. This being so, Norwood claims, as between him and the other creditors, that his right is to have the entire proceeds of sale remaining after payment of the plaintiff's mortgage applied pro rata to the payment of his debt, along with the two mortgage debts and the debt of the Merchants' Bank now in judgment. In cpposition to this

claim of Norwood, the Merchants' Bank insists that, by ob-. taining judgment on its claim, it acquired a lien on the property by reason of which it is entitled to have the entire proceeds of sale applied to the satisfaction of its debt to the exclusion of the mortgage debts and the debt of Norwood, which is not in judgment debts and the debt of Norwood, which is not in judgment. Laying aside for the moment the claim of the mortgagees against each other, we consider first whether the Merchants' Bank, has, by virtue of its judgment, any preference over the mortgages. The precise point here involved has not been decided under our statute, but from a consideration of the scope and object of the statute on the subject (Civil Code, 1902, § 2456) it seems perfectly clear that the judgment has no such preference over the mortgages. The statute makes the mortgages of no effect against the Merchants' Bank and Norwood, as subsequent creditors without notice, because of the lack of record within 40 days. But the statute also provides that the recording, 'subsequent to the expiration of said 40 days, shall from the date of such record operate as notice to all who may subsequently there to become creditors or purchasers.' The right of subsequent creditors to assert mortgages not recorded within the statutory time to be void against them is fixed by the statute, and cannot be changed by the recording out of time. If the subsequent creditor has no lien at the time of the recording beyond the 40 days, then he stands on an equal footing with the mortgage creditor. If he has acquired a lien, then he must be satisfied first."

While the learned justice makes no reference to the proviso in the Act of 1876 and the construction placed upon it in *King v. Fraser,* it would seem clear that this conclusion is based upon the view that the proviso in the Act of 1898 worked a radical change in the status of a mortgage recorded out of time with reference to the rights of subsequent creditors, who had not acquired a lien at the date of recording the mortgage. It would seem that, under the decision

in *King v. Fraser,* both mortgages, having ·been recorded out of time, would have taken priority over the Merchants' Bank, because its judgment was rendered after the record, and Norwood had never acquired any lien. Judge Woods proceeds to say: "But for all other purposes, after the mortgage has been recorded, though after the statutory limit, it is to be regarded as if a mortgage had been made as ·of the day of record, having a lien from the date of the recording which cannot be displaced by any lien subsequently acquired by record or otherwise. This is the principle laid down in *Steele v. Mansell,* 6 Rich.,442. *King v. Frazier,* 23 S. C., 543, and *Carraway v. Carraway,* 27 S. C., 576. * * * The rule which the Statute was intended to establish, and we think its plain meaning, is that mortgages not recorded within the time fixed are invalid as to subsequent creditors whose debts were contracted before actual record, but that after actual record no superior lien can be acquired by judgment or otherwise."

The practical result of the conclusion reached by Judge Woods, so far as it relates to the question presented here, is that the mortgages held by Barrett and Gist were entitled, as against the Merchants' Bank and Norwood, to share *pro rata* in the entire surplus proceeds of sale, neither having any prior lien as against the Merchants' Bank and Norwood. There were other phases of the controversy disposed of by the opinion, not material to the question presented here. It is not suggested in the arguments or briefs of counsel that the decision in *Brown·v. Sartor* overrules, or is inconsistent with, *King v. Fraser.* The last case is based upon the proviso contained in the Act of 1898, and, I assume, is to be taken as the law of South Carolina upon the subject unless changed by later legislation.

We are thus brought to a consideration of the question in the light of the Act of 1914. The only change made in the Act of 1898, by this Act, was to strike out the proviso and insert in lieu thereof the following: "Provided, never-

theless, that the recording and record of the above-mention-ed deeds and instruments * * * subsequent to the expiration of said ten days shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deed or instruments of writing had been executed and delivered on the date of the record thereof."

While counsel for the trustees earnestly contend for a contrary construction of this proviso, I venture to think that the Legislature inteneded what it said—that the mortgage, recorded out of time, was deprived of its validity by relation to the date of its execution, as to debts contracted subsequent to its execution and before registration, but was a valid lien as against all debts in respect to which no lien had attached, from the date of its registration—as if the mortgage had been executed on the date of its registration; in other words, the Legislature crystallized into a statute the construction put upon the Act of 1876 by the Supreme Court in *King v. Fraser, supra.* While not of controlling force, it is significant that the proviso of 1914 is in substantially the same language as the second headnote to *King v. Fraser.*

It is of interest to note that, while the words "whether lien creditors or simple contract creditors" are for the first time found in the Act of 1898, and re-enacted in 1914, the proviso of 1914 gives to the registration of the mortgage "subsequent to the expiration of ten days * * * the same effect as to the rights of all creditors and purchasers without notice as if * * * executed and delivered on the date of the record thereof." It would seem that the words "whether lien creditors or simple contract creditors" were inserted in the Act of 1898 to remove any doubt as to the extent of the retroactive effect of registration within the 10-day limit, and to exclude all doubt as to the intention to give to the registration, out of time, the same effect as a mortgage ex-

ecuted on the day of its registration, the . comprehensive words "all creditors" were used.

It may be that the construction put upon the proviso of 1898 in *Brown v. Sartor* was not in accordance with the legislative mind, and the amendment of 1914 was intended to restore, in unmistakable terms, the proviso of 1876 as constructed in *King v. Fraser*. It is worthy of note that, so far as the industry of counsel discovers, the Act of 1914 has not been construed by the Supreme Court of South Carolina, although it has been in effect 7 years.

Counsel call attention to a decree rendered by Circuit Judge Peurifoy, presiding in the Court of Common Pleas of Hampton County in *Nellwood Lumber Company v. Vincent,* from which no appeal was taken. Upon an agreed state of facts the question was presented respecting the effect of the registration of a lease "out of time," as against simple contract creditors without notice, whose debts were contracted subsequent to the execution but prior to the registration of the lease. The learned Judge, quoting the language of the proviso to the Act of 1914, says: "I am of the opinion that this amendment means exactly what it says, and consequently from the above statement of facts the lease of Nellwood Lumber Company to Starr and Patrick would be considered as executed as of the date it was recorded, and therefore valid as to all simple contract creditors whose claims arose between the date of the execution and the date of the record."

It is difficult to understand why, if, as provided by the statute, within the time limit within which the mortgage should be recorded to give to it a lien as against both lien and simple contract debts by relation to the date of its execution, it should not, as provided by the proviso, be given a lien from the date of its registration as to "all creditors," as if it had been executed on the day upon which it was recorded. Whatever doubt lurked in the language of the proviso to the Act of 1876 was so resolved in *King v. Fra-*

*ser, supra.* The Act of 1898 and proviso thereto was so construed in *Brown v. Sartor,* supra, as to nullify this construction of the proviso to the Act of 1876. It was manifestly the intention of the Legislature to remove all doubt as to the purpose and effect of the statute law of the State regarding this question, of so much importance to the security of title to property and the extent of incumbrances thereon. By so construing, as the language clearly denotes, the proviso of 1914 as to make mortgages recorded, after the time limit, operate as against "all creditors" as though they had been executed and delivered on the day of their registration, relieves the rights of the mortgagees and subsequent creditors of the uncertainty which, it is conceded, previously existed. This uncertainty rendered titles to property insecure because of the difficulty and frequent impossibility of ascertaining what debts had been contracted during the 10 days' interim between the execution and registration of the mortgage, and whether such creditors had notice of the mortgage. This construction harmonizes with that usually placed upon registration acts in other states.

I concur in the conclusion of the Special Master that the mortgage held by the Merchants' & Farmers' Bank of Marion on the tobacco seized by it is a valid lien to the extent of the unpaid balance of the note of $10,000, executed by F. H. Saunders & Co. February 15, 1919. I am further of the opinion that the mortgage, by its express terms, is limited to securing the note of $10,000, due and payable to the Merchants' & Farmers' Bank of Marion, S. C., and cannot, as against the trustees of F. H. Saunders & Co., be extended to secure a separate indebtedness due the Bank of Latta, S. C.

The Merchants' & Farmers' Bank of Marion, S. C., will deduct from the proceeds of the sale of the tobacco $9,125, the balance due on said note, $8,061.66, together with $404 cost, insurance, and attorney's fees, and pay the balance to the trustees in bankruptcy of F. H. Saunders & Co.

The suggestion is argued that the Saco-Lowell contract was not recorded prior to the appointment of a receiver. It appears that the receiver was appointed on January 4, 1921, but the order was not filed until the 5th, and the contract was recorded on the 4th. The order was not effective until it had been filed, and, on the day before, the contract was recorded, which we hold to be sufficient to antedate the appointment.

"While the written instrument purporting to be the judgment in a cause, remains in the possession of the judge who is to pronounce it, it is of no effect, and, like a deed, not delivered. The moment, however, it is filed by the Clerk of the Court, it becomes the judgment of the Court and fixes the rights of the parties." *Areker v. Long,* 46 S. C., 295; 24 S. E., 83. *Genobles v. West,* 23 S. C., 160. *King v. Railroad Co.,* 86 S. C., 512; 68 S. E., 769. *Dunton v. Harper,* 64 S. C., 343; 42 S. E., 153.

It hardly needs authority for the proposition that the receiver is in no sense a subsequent purchaser or creditor, but stands in the shoes of the debtor, with no greater title or interest than he possessed. *Grube v. Lilienthal,* 51 S. C., 443; 29 S. E., 230. *Mairs v. Smith,* 3 McCord, 52. *Plunkett v. Carew,* 1 Hill, Eq., 172. *Tibbetts v. Weaver,* 5 Strob., 144. *Big Four Co. v. Wright,* 207 Fed., 535; 125 C. C. A., 577; 47 L. R. A. (N. S.), 1223. Note 32 L. R. A., 44; Ann. Cas. 1916A, 1261. *Holt v. Henley,* 232 U. S., 639; 34 Sup. Ct., 459; 58 L. Ed. 767. Note L. R. A. 1917C, 444.

2. *Mason Machine Works.* This company claims priority over the general creditors to the extent of $59,217.19, that being the amount claimed to be due them under the following circumstances: A written contract was entered into by and between the company and the corporation, and provided for the furnishing of certain machinery to the mill aggregating $59,217.19. The contract is dated August 25, 1919, and signed by Cash Mills September 1, 1919. The machinery

was delivered and installed in the mill after April, 1920. The contract contained the following provision relating to reservation of title:

"It is expressly understood and hereby agreed that the title to the machinery named in this contract shall remain with and in Mason Machine Works until all payments of both cash, notes and interest shall have been made in full, and proper receipt for same acknowledged by the seller. The sale of the machinery enumerated is made solely to Cash Mills for a mill at Gaffney, S. C., and is to be put in operation on their premises, and must not be removed therefrom, resold, or transferred to another party until all claims of the Mason Machine Works have been settled in full; or by the written consent of the Mason Machine Works."

The contract was recorded in the chattel mortgage book in the office of the register of mense conveyances of Cherokee County on January 5, 1921, the day after the order appointing a receiver was signed, and the day it was filed in the Clerk's office. Counsel for the holders of the cotton claims objected to the introduction of the Mason contract and to their claim for preference upon the following grounds: (1) That the probate is defective, in that it bears no seal of the person who purported to sign as notary public; (2) that the contract was dated August 25, 1919, and not recorded, or attempted to be recorded, until January 5, 1921, after the appointment of a receiver; (3) that the claims represented by them arose subsequently to the Mason claim.

The affidavit attached to the contract, in proof of its execution, was signed by the witness before a person who signed his name "Roy Macomson, Notary for S. C.," without a seal.

The conclusions announced in reference to the Saco-Lowell Shops claim are applicable to this claim, and the questions raised in reference to it, with the exception of the contentions that the contract was improperly recorded, owing to a defect in the probate, and that it was not recorded until January

5, 1921, the day the receiver's appointment was filed in the Clerk's office. It is claimed that the absence of a seal, to the proof of execution before a Notary Public, rendered the contract incapable of being recorded. Section 735, Vol. 1, Code of Laws, A. D. 1912, provides:

"He [notary public] shall have a seal of office, which shall be affixed to his instruments of publication and to his protestations; but the absence of such seal shall not render his acts invalid, provided his official title be affixed."

The Notary Public affixed his official title, and the Probate was therefore valid.

As to the objection that the contract was lodged for record upon the same day the order appointing the receiver was filed: The general rule is that fractions of a day will not be considered, and that acts done on the same day are done at the same time. 38 Cyc., 314. There are, however, exceptions to this rule, as where it is necessary to determine the conflicting rights of rival claimants, when they depend upon priority in fact. Assuming that this is a case within such exceptions, the opposition has failed to offer any evidence to support their contention that the order was filed prior to the recording.

The question next arises as to the mode in which these two claimants, who are accorded priority over the general unsecured creditors, shall be allowed the benefit of that priority. Prior to the appointment of a receiver, they each had a specific lien upon certain machinery. They consented to a sale of the entire plant as a whole, including such machinery, and that whatever rights, legal or equitable, which they had, should be transferred to the proceeds of the sale. It is highly probable that the sale did not realize the full value of the entire plant; at least that is a question to be determined. If it did not, and these claimants are allowed priority to the full extent of their claims, it is clear that they bear no part of the loss, all of which will be borne by the general creditors. It is fair,

therefore, that these claimants be limited to such proportion of the value of the incumbered machinery as the net proceeds of sale bear to the value of the entire plant.

3. *Barber-Colman Co.* This company claims priority over general creditors to the extent of $4,000, that being the amount claimed to be due them under the following circumstances: A written contract was entered into by and between the company and the corporation and provided for the sale of a certain Warp Tying Machine to the corporation for the sum of $10,000. The contract was dated September 20, 1919. The machine was delivered and installed in the mill soon thereafter, long before the claim of the holders of the cotton claims arose.

The attorney for this claimant states in his argument:

"This is a contract by which Barber-Colman Company agrees to sell, and the mill agrees to buy and pay for, a Warp Tying machine. The contract contains also an express license to use the machine under numerous patents, and the further provision that if any part of the purchase price or interest shall remain unpaid the license to use the machine shall immediately be determined."

These claimants appeal upon two grounds: (1) That the Court refused to allow them any priority by reason of their contract; (2) that the Court erred in dismissing their attachment.

As to the first ground: It appears so clearly that holders of the cotton claims were subsequent creditors, so far as these claimants are concerned; that the contract falls within the provisions of Section 3740, and that it was not recorded until long after the receiver was appointed; that further comment in support of the denial of priority is unnecessary.

As to the second ground: The attachment was not levied until after the report of the referees was filed, long after the receiver took possession of the assets.

"The possession of property by a receiver is, in the eye of the law, regarded as the possession of the Court, which

appointed the receiver, and hence such property being in *custodia legis* cannot be seized by attachment." 23 R. C. L., 69. The Circuit Judge was clearly right in vacating the attachment.

## THE COTTON CLAIMS

It would appear at first blush that this Court having established the right of Saco-Lowell Shops and Mason Machine Works to priority over the unsecured general creditors, and that these two claimants are the only ones contesting the validity of the cotton claims (not even the receiver joining them in the attack), the question of the validity of these claims has become academic. But when it is considered that the priority accorded the above two claimants does not extend to the full amounts of their respective claims, but only to such proportion of the value of the incumbered property as the net proceeds of the sale bear to the value of the entire plant including the incumbered machinery, and that, for the unpaid balances upon their claims, they take rank with all other unsecured general creditors, these claimants have a direct interest in the reduction of the claim of any general creditor. The evidence in support of these claims in unsatisfactory to a degree. It is confused and contradictory; books and documents were called for and not produced upon the flimsiest excuses; the receiver whose duty it was to rigidly require the proof of the validity of all claims took no part in the contest, rather co-operated with the claimants and submitted to the establishment of the claims without appeal. The question whether the losses of these claimants were based upon the legitimate standard of the difference between the contract price and the market price at the time of agreed delivery, or upon their losses upon contracts supervening the breaches, is nebulous.

We announce the following conclusions:

1. That the Saco-Lowell Shops are entitled to priority over the general creditors, upon their claim, out of the net proceeds of sale, to the extent of such proportion of the

value of the incumbered machinery as the net proceeds of sale bear to the value of the entire plant at the time of the sale, including the said machinery; and that for the unpaid portion of their claim they rank as general unsecured creditors.

That the Mason Machine Works are entitled to he same rights as are accorded the Saco-Lowell Shops.

3. That the claim of Barber-Colman Company to priority is denied.

4. That the validity of the cotton claims be referred by the Circuit Court to a special referee, other than those heretofore appointed, to take testimony *de novo* and report his conclusions of law and fact to the Court; and in that proceeding the receiver and his attorneys are directed to take active participation in requiring the establishment of said claims; and that there be also referred to said special Master the question of the amounts to which the two preferred claimants are entitled under the principle hereinbefore declraed.

The judgment of this Court is that the decree of the Circuit Court be reversed and that the case be remanded to that Court for further proceedings consistent with the foregoing conclusions.

MESSRS. JUSTICE WATTS and MARION concur.

MR. JUSTICE FRASER (dissenting): The Cash Mills did not manufacture anything. It became insolvent before it was ready for work. It built its mill, bought machinery for the manufacture of cotton, and cotton to be manufactured. The mill was in the hands of a receiver before all the machinery was installed. The cotton was bought for future delivery. The mills bargained for at least 1,800 bales of cotton, only 100 bales of which were ever delivered. The machinery was bought under contracts of various forms, but all of them were clearly intended to secure the purchase money, and it is the law of this State that an instrument of writing (whatever may be its form), which is intended as a security for a debt, is a mortgage. These mortgages were

not recorded within the statutory time of ten days, and were not recorded until long after the cotton contracts were made. The contest in this Court is between the cotton claims and the machinery claims. The machinery men claim that while the original contracts of sale of cotton to the mills are valid, yet the cotton men made hedging contracts in violation of our statutes, and that the cotton claims are losses on the unlawful contracts, and their claims are not recoverable. The claim of Bean Bros. is the largest claim against the mill, and is for more than $80,000. When W. S. R. Bean, a witness for Bean Bros., was on the stand, he was allowed to prove the contract of sale with the Cash Mills and the failure of the mills to receive the cotton and the amount of loss. The machinery men then demanded the production of the book. The witness said the books were in New Orleans; that it was too much trouble to bring them here; and it would be a serious inconvenience to his firm to have an inspection made. They did not produce the books, and no effort was made to require them to do so, either by the referees or the Circuit Judge. The machinery men were entitled to have the cotton men prove their claims by the records. It would not be right to allow the cotton men to take advantage of the exceeding great generosity of the machinery men. There are many exceedingly interesting questions in this case, but the first thing is to get at the facts.

Inasmuch as this case will have to go back, it is well to let the record show plainly the dates of the several chattel mortgages, when the machinery was delivered, and when recorded.

MR. CHIEF JUSTICE GARY concurs with MR. JUSTICE FRASER.

MR. CHIEF JUSTICE GARY, (dissenting): It has not been made to appear that the findings of fact by his Honor the presiding Judge, were against the preponderance of the testimony. And the case of *Brown v. Sartor,* 87 S. C., 116; 69 S. E., 88, clearly shows that none of the creditors were entitled

to priority in the distribution of the assets. The appeals should therefore be dismissed, and the judgment of the Circuit Court affirmed.

Order Revoking Stay of Remittitur.

*Per Curiam.* After the filing of the opinion of the Court in this case on April 12, 1923, the following applications were made to the Court:

1. Application by Saco-Lowell Shops and Mason Machine Works for a modification of the judgment of the Court which would allow them payment in full of the several amounts of their claims, instead of the proportions allowed in the opinion.

2. Application by Chas. L. O'Neale & Co., A. C. Walker, and Bean Bros. for a rehearing, or at least for a modification of the judgment declaring their respective claims established against the receiver's estate instead of remitting their claims for adjudication by the Circuit Court.

3. Application by Barber-Colman Co. for a rehearing.

These applications will be considered in the order named.

1. *Application of Saco-Lowell Shops and Mason Machine Works.* It appears by the affidavit of counsel for these claimants, supported by written statements by the counsel for the receiver and by counsel for the cotton claimants, that after the order of sale by Judge Wilson, dated November 10, 1921, was passed, which order directed a sale free and discharged of all liens or incumbrances and that such liens and incumbrances attach to the proceeds of sale, the claimants gave notice of intention to appeal therefrom, which stayed the sale; that on December 2, 1921, counsel for the claimants, counsel for the receiver, and counsel for the cotton claimants had a conference in reference to proceeding with the sale; that the result of that conference was an agreement by the counsel referred to (the counsel for the receiver particularly desiring a speedy sale of the property as a whole, including the machinery upon which the claimants insisted upon their liens); that the sale should take place

on the first Monday in February, 1922, at the upset price of $300,000; and that, if the claims of the claimants should be established in priority to the claims of general creditors, these claims should be paid in full. These claimants therefore ask that the judgment be modified, so as to give effect to that agreement.

If the alleged agreement was entered into, and we have not the slightest doubt that it was, it should have been incorporated by supplemental order in the decree of sale signed by Judge Wilson, dated November 10, 1921. As the matter now stands, it is not a part of the record for appeal, and can be considered only in the light of a private agreement between counsel, binding upon the parties who entered into it, the cotton claimants and the machinery claimants. It is a question whether or not the receiver or his counsel had the power without the confirmation of the Court to thus barter away the interests of the general creditors, some of whom the Court is advised may contest the alleged agreement. The most that we can say or do in support of the agreement is to hold that it is binding between the above-named claimants, and in the distribution of the assets, as between them, is entitled to recognition.

The question whether or not the other general creditors are bound by the consent of counsel for the receiver is one that they are entitled to be heard upon and is accordingly reserved. The application is therefore refused.

2. *Application of the Cotton Claimants for a Rehearing or at Least a Modification of the Judgment.* The Court has carefully considered the grounds for a rehearing and does not perceive that any principle of law or matter of fact has been overlooked. It is accordingly dismissed, and the order hertofore passed staying the remittitur is revoked. They also ask for a modification of the opinion declaring their claims established instead of remitting them to the Circuit Court for adjudication.

25—S. C.—125.

The special referee reported in favor of the validity of the cotton claims. His report in this respect was confirmed by the Circuit decree. The machinery claimants only appeal from that decree. The opinion of this Court reverses the decree in respect to this holding and remands the case to the Circuit Court for further testimony and adjudication. The cotton claimants now appear with an agreement, entered into subsequently to the filing of the opinion, with the machinery claimants to the effect that the exceptions of the machinery claimants with reference to the validity of the cotton claims be deemed withdrawn and abandoned; the effect of which is to leave the Circuit decree affirmed as regards them. In other words, the machinery claimants having established the priority of their claims are no longer interested in the validity or invalidity of the claims of general creditors and abandon them to their fate. To this proposed arrangement the attorneys for the receiver, representing the interest of all other general creditors as well as the cotton claimants and the stockholders of the corporation, have assented.

In the first place, the Court has assumed that the appeal by the machinery claimants was intended to secure an adjudication of the question raised. That question has been adjudicated, and we know of no authority in justifying the Court now in reversing the decision. It is not improbable that other general creditors relied upon the appeal of the machinery claimants, and it would be unfair now to deprive them of a possible benefit. The application for a modification of the judgment of this Court is therefore refused.

3. *Application of Barber-Colman Company for a Rehearing.* The petition has not convinced us that any material matter of law or fact has been overlooked. It is therefore dismissed, and the order heretofore passed staying the remittitur is revoked.