12665

BAUGH & SONS CO. v. GRAHAM ET AL.

(148 S. E., 220)

"It may be remarked in passing that debtors are not precluded from making *bona fide* sales of their property for a fair consideration if same is not done with intent to hinder, delay, or defraud creditors. It sometimes happens, under circumstances of that kind, that the registration of instruments becomes the controlling question. In the pending case, however, the plaintiff apparently intended to charge fraud on the one hand, and a failure to record within the statutory period on the other hand, as the grounds on which it hoped to recover.

"However, as will hereinafter appear, in my judgment the question of registration or recording of the deeds in question is not, under the interpretation placed on our recording statute of our Supreme Court, a practical question in this case. It will be seen that the deeds in question were not only made as appears by the testimony before the relation of debtor and creditor existed between the defendants Graham W. Graham and R. E. L. Graham and the plaintiff in this case, but that the deeds were also recorded while the plaintiff was a simple contract creditor.

"The Master found and reported that under date of November 10, 1919, the defendant R. E. L. Graham purported to convey to his wife, Laura J. Graham, for an expressed consideration of $1,000, 300 acres, more or

less, of land owned by him individually and his half interest in what is referred to as the Grainger land. He also found that this amount was not, in fact, paid, notwithstanding the positive testimony of R. E. L. Graham that this sum was actually paid. There was no attempt to impeach his testimony, and therefore I am disposed to hold that the Master was in error in his finding in that particular. The burden is always on the plaintiff to prove, by a preponderance of the evidence, the material allegations of his complaint. On this point the Master had before him not only the testimony of R. E. L. Graham, but the sworn answer of Laura J. Graham, which had some evidentiary weight, and who, on account of her death, was not present to testify at the hearing. Patently the preponderance of the testimony was in favor of the defendants and against the contention of the plaintiff.

"The Master found further that this deed was recorded on November 20, 1920, and that in December, 1919, after the alleged date of the deed in question, the defendant R. E. L. Graham became indebted to the plaintiff, Baugh & Sons; that this indebtedness was afterwards liquidated by notes bearing date June 1, 1920, and subsequently reduced to judgment after sundry credits had been made thereon, and held, briefly, that the deed in question not having been recorded within the 10 days fixed by statute, could be considered effective only from the date of its recording, and he held also that at the time of the recording of the deed, Mr. Graham was insolvent and that, regardless of the date of the deed, it was ineffective against the plaintiff in this case.

"A careful study of the testimony, I think, shows that at the date of the deed referred to, R. E. L. Graham was not indebted to any one, especially to the plaintiffs herein, and, if so, he had the right to either sell or convey away his property. There was no evidence that Laura J. Graham had any knowledge of his business affairs, and even if the testimony had showed that R. E. L. Graham was attempting to dispose of his property with intent to hinder, de-

lay or defraud creditors, it would have been necessary further to prove that his grantee confederated with him to that intent and purpose. There is an entire absence of any testimony to that effect, so I think the Master was in error: First, in fixing the effective date of the R. E. L. Graham deed to Laura J. Graham as of November 20, 1920, and in holding that the failure to get the deed recorded before that time was fatal, as against the claim of the plaintiff, *Carroll v. Cash Mills,* 125 S. C., p. 332, 118 S. E., 290, holds that the rights of unsecured creditors dates from the time their claims become liens. In other words, under the authority of the case just cited, even if it were admitted that R. E. L. Graham was already in debt to the plaintiff on November 20, 1920, when the deed in question was filed for record, only lien creditors could claim priority of right between the date of the alleged deed and its record. The testimony shows that plaintiff in this action acquired no lien by judgment against R. E. L. Graham until 1923, practically three years after the deed made by him to his wife, Laura J. Graham, had been recorded.

"So, to sum up so far as the attack on the title of Laura Jane Graham is concerned. I conclude: First, that the testimony shows that the 10th of November, 1919, is the correct date of the deed made by R. E. L. Graham to her. Second, that at that time R. E. L. Graham was not insolvent and not indebted to the plaintiff. Third, that there was no collusion between Laura J. Graham, the grantee, and R. E. L. Graham, the grantor. Fourth, that so far as plaintiff herein is concerned, the deed in question was effective from its date and until plaintiff became a lien creditor; that at the time of the recording of the said deed on November 20, 1920, the plaintiff was, within the meaning of *Carroll v. Cash Mills, supra,* simple contract, unsecured creditor, and therefore that the deed made by R. E. L. Graham to his wife for life with the remainder in fee to the infants, namely, Woodrow Graham, Bernice Graham, Inaise Graham, and Roschell Graham,

is sufficient to vest in them his title to the lands described in the deed made by him to Laura Jane Graham and adverted to in the complaint, so far as this plaintiff is concerned.

"The Master found and reported that under date of October 24, 1918, Graham W. Graham purported to convey to his wife, L. L. Graham, for an expressed consideration of $2,000, 150 acres, more or less, of land owned by him individually. The Master also finds that deed of Graham W. Graham purported to convey to Lillious L. Graham, under deed of date June 19, 1920, a tract of 150 acres, more or less, but finds that this deed covers the same and identical tract conveyed to her, the said L. L. Graham, by the said deed of Graham W. Graham to L. L. Graham of date October 24, 1918. The lands covered by these said deeds are known as the Powell tract, and, as is found by the Master, both of these deeds cover the same and identical tract of land. There are several other deeds and one mortgage, all covering this same Powell tract of land, and for the purpose of giving a careful consideration to all transactions affecting this tract, the conveyances covering the 150-acre tract, known as the Powell tract, are briefly set out as follows, to wit:

"First Conveyance

"J. J. Powell to Graham W. Graham, deed in fee-simple form, dated October 24, 1918, recorded January 3, 1920, in Book U-4, at page 158. This deed purports to convey the fee-simple title to the whole of the Powell tract of land, and from the description it appears that all of the lands known as the Powell land actually contain approximately 400 acres, are bounded and described in this deed. A consideration of $1,100 is expressed in this deed.

"Second Conveyance

"Graham W. Graham to Lillious L. Graham, dated October 24, 1918, recorded on November 20, 1920, in Book X-4, at page 237, conveying all of the Powell tract of land and described as 150 acres, more or less; but it appears from

the boundaries and from the evidence in the case that this deed covers all of the lands known as the Powell lands conveyed by Graham W. Graham to Lillious L. Graham. A consideration of $2,000 is expressed in this deed.

### "Third Conveyance

"J. A. Lewis, sheriff, to Graham W. Graham, sheriff's deed in fee-simple form, dated November 4, 1918, recorded November 12, 1918, in Book N-4, at page 56. This deed resulted from the foreclosure of a mortgage given by W. C. Powell to Cooper Guano Company, and transferred to Dan W. Hardwick, the date of the mortgage being January 27, 1915, and recorded February 8, 1915, in Book 39, at page 317. The mortgage and the foreclosure proceedings appear in Judgment Roll 4428. The consideration for this deed is $181, and conveys 30 acres, more or less, of what is known as the Powell tract of land.

### "Fourth Conveyance

"W. L. Bryan, C. C. C. P., to Graham W. Graham, fee-simple deed, dated June 17, 1920, and recorded June 17, 1920, in Book N-4, at page 150. This deed conveys 150 acres, and the description covers all of the lands, known as the Powell tract. The consideration is expressed as the sum of $700. This deed resulted from a partition suit, as appears by Judgment Roll 4502, in which John Powell was plaintiff, and Laura Powell et al. defendants.

### "Fifth Conveyance

"G. W. Graham to L. L. Graham, fee-simple deed, dated June 19, 1920, and recorded November 20, 1920, in Book X-4, at page 238. Consideration is expressed as the sum of $2,000. The deed conveys 150 acres, more or less, but the boundaries show that it covers all of the Powell tract of land which, from the testimony, contains approximately 400 acres.

"Sixth Conveyance

"Lillious L. Graham to Benjamin E. Hewitt, fee-simple deed, dated December 28, 1920, recorded January 18, 1921, in Book Y-4, at page 63. The consideration expressed in this deed is the sum of $10,000. This deed conveys 340 acres, more or less, but the boundaries cover the same lands apparently as the former conveyance of the Powell land described in deeds as 150 acres, more or less.

"Seventh Conveyance

"B. E. Hewitt to Lillious L. Graham, conveying by way of mortgage, dated December 28, 1920, recorded January 20, 1921, in Mortgage Book No. 58, at page 57; consideration, $8,000. This mortgage covers the same lands conveyed to B. E. Hewitt in deed described as sixth conveyance.

"Eight Conveyance

"B. E. Hewitt to L. L. Graham, fee-simple deed, dated August 23, 1922, recorded August 29, 1922, in Book C-5, at page 151, conveying 350 acres, more or less, for an expressed consideration of $1,000; the same being the identical Powell tract of land conveyed by Lillious L. Graham to Benjamin E. Hewitt in the sixth conveyance heretofore mentioned.

"For the purpose of determining the exact status of this tract of land (known as the Powell tract), it is necessary to inquire into the reason for the execution of these various deeds. It appears that all of them cover the same land or parts of the same land conveyed by Graham W. Graham to L. L. or Lillious L. Graham by the deed of date October 24, 1918. It is worthy of note that this first deed to L. L. Graham was executed on the same date as the deed of J. J. Powell to Graham W. Graham. Counsel for the defendants called attention to the fact that the deed of J. A. Lewis, sheriff, to Graham W. Graham, dated on November 4, 1918, resulted from the foreclosure of a mortgage over a 30-acre tract, being a part of the Powell tract of 150 acres. By re-

viewing the judgment roll of this foreclosure, it appears that L. L. Graham was not made a party to this suit, although title appears to have been in her. The testimony shows that Mrs. L. L. Graham furnished the money to her husband Graham W. Graham, to purchase this land at the foreclosure sale. The equity of redemption existed in her favor, and upon paying Graham W. Graham the amount of money paid by him for title to this 30-acre tract, she was entitled to a deed for such interest as Graham W. Graham acquired under this foreclosure suit. The evidence is sufficient to show that L. L. Graham paid Graham W. Graham the amount due upon this foreclosure suit, and therefore redeemed the interest sold as a result of the foreclosure. The fourth conveyance, that of W. L. Bryan, C. C. C. P., to Graham W. Graham, dated June 17, 1920, purports to convey 150 acres, the Powell tract, and the Court records show that this deed resulted from a sale for partition and division of the estate lands of W. C. Powell. It sufficiently appears that this suit was for the purpose of clearing the probable claims of heirs at law of W. C. Powell as well as to satisfy certain mortgages against the said tract of land. The testimony shows that Mrs. L. L. Graham furnished the money to satisfy the sale price of the lands, and that through mutual error and mistake the Clerk of Court made the deed to Graham W. Graham instead of to L. L. or Lillious L. Graham, but that two days after the recording of the deed Graham W. Graham made his deed to L. L. Graham (see fifth conveyance), for the purpose of carrying out the trust imposed in him. The testimony shows that with the original purchase price, and with the amount paid by Mrs. Graham to obtain a clear title, she paid in all about the sum of $2,700 for this tract. Under all the testimony, and taking into consideration the fact that the lands sold for partition and division for the sum of $700 during the year 1920, it appears that the amount paid by Mrs. Lillious L. Graham was a fair price. The sixth conveyance shows that Mrs. Lillious L. Graham sold the Powell

tract for $10,000 on December 28, 1920, but the purchaser later made deeds back to Mrs. Graham, and since the land was not paid for at this high figure, and after considering the testimony in the case, there is little doubt that this sale was far in excess of the value of the land. The testimony shows that the property belonged to Lillious L. Graham from October 24, 1918, and that her money paid the necessary amounts after this to clear up defects discovered in the title after she acquired her first deed. Even though some of the transactions were in the name of Graham W. Graham; he was subject to a resulting trust in favor of Lillious L. Graham, and all these transactions occurred before the plaintiff reduced their fertilizer indebtedness of June 1, 1920, to judgment, and under the case of *Carroll v. Cash Mills, supra,* the title having passed out of Graham W. Graham before the rendering of the judgments, and such titles having been recorded almost three years before the recording of the plaintiff's judgment, Lillious L. Graham holds the same free from the lien of the subsequently acquired judgment. Of course, if the plaintiff had been able to establish its charge of fraud, this rule would not apply, but there is an entire absence of any testimony to sustain the charge of fraud or even any connivance between or on the part of Lillious L. Graham with Graham W. Graham, even if he had intended to perpetrate a fraud, and as to which the testimony is equally lacking.

"So, to sum up so far as the attack on the title of Lillious L. Graham is concerned, I conclude: First, that the testimony shows that the 24th day of October, 1918, is the correct date of the first deed of Graham W. Graham to Lillious L. Graham, and June 19, 1920, is the correct date of the second deed of Graham W. Graham to Lillious L. Graham, but that this second deed only conveyed some outstanding interest of the heirs of W. C. Powell. Further, in this connection, the title acquired by Graham W. Graham at the partition sale vested in Lillious L. Graham immediately when Graham W.

Graham acquired this title under his warranty in the deed of himself to Lillious L. Graham on October 24, 1918, and this second deed was not necessary in order to perfect title in the said Lillious L. Graham. Second, that at the effective date of the first deed which really passed the title of Graham W. Graham, he was not indebted to the plaintiff. Third, that there was no collusion between Lillious L. Graham, the grantee, and Graham W. Graham, the grantor. Fourth, that so far as plaintiff herein is concerned the deeds in question were effective from their dates, the plaintiff not having acquired a lien prior to the recording of the deeds, and that at the time of the recording of the said deeds, on November 20, 1920, and on June 19, 1920, the plaintiff was within the meaning of *Carroll v. Cash Mills, supra,* unsecured, simple contract creditor, and therefore that the deeds made by Graham W. Graham to his wife is sufficient to vest title in her, the said Lillious L. Graham, to the lands described in the deeds by him to Lillious L. Graham, and adverted to in the complaint, so far as these plaintiffs are concerned. Fifth, that the testimony shows that Lillious L. Graham furnished all the money used by Graham W. Graham in the purchase of the said tract of land, and therefore he was subject to a resulting trust in favor of Lillious L. Graham, and all of these transactions occurred before the plaintiff reduced its fertilizer claims to judgment. Sixth, that the evidence shows no damage done to plaintiff by the failure to record any of these deeds, since the evidence shows no search of the records or reliance upon them.

"The Master found that so far as the deed of Graham W. Graham to Lillious L. Graham, dated January 13, 1915, and recorded January 16, 1915, in Book B-4, at page 55, was concerned, there was no evidence tending to show any right of creditors adverse to the conveyance of the 355-acre tract conveyed by his deed. I concur with the Master in this finding.

"Wherefore, it is ordered and adjudged that the Master's report, in so far as it finds in favor of the defendant Lillious

L. Graham as to the 355-acre tract of land, be affirmed and that in all particulars inconsistent herewith it should be over-ruled; the plaintiff's complaint be dismissed; and that the defendants have their costs and disbursements herein against the plaintiff, to be taxed by the Clerk of this Court."

*Mr. H. H. Woodward,* for appellant,

*Messrs. W. F. Stackhouse,* and *Ford & Suggs,* for respondents,

May 15, 1929.

The opinion of the Court was delivered by Mr. Justice Cothran.

The reasoning and conclusions of his Honor, Judge Shipp, are entirely satisfactory to this Court, and his decree is accordingly affirmed.

It may be proper to advert to the error of the Master which controlled his decision. He did not pass upon the question whether the deeds of 1918, 1919, and 1920 were executed and delivered upon the dates which they bear, but conceived that as the Recording Act, Section 3542, Code, 1912 (Section 5312, Code, 1922), provides that where a deed or other paper required to be recorded is not recorded within 10 days after its execution, the recording "shall, from the date of such record, have the same effect as to the rights of all creditors and purchasers without notice as if the said deeds or instruments of writing had been executed and delivered on the date of the record thereof," all of the circumstances

connected with the execution and delivery of the deed must be analyzed as if they had occurred upon the day of record. The proviso in the Act refers only to the effect of the recording, and not to the circumstances connected with the execution and delivery of the deed which must be considered as of the date of the deed, not the date of the record.

His Honor, the Circuit Judge, decided that the deeds were executed and delivered at their respective dates; the case is therefore, so far as recording is concerned, controlled by the case of *Carroll v. Cash Mills,* 125 S. C., 332, 118 S. E., 290, as the Circuit Judge held.

The question of the effect of the failure to record within the prescribed time upon the rights of creditors is quite apart from the question of fraud in the execution and delivery of the deeds. Although the creditor may not obtain any advantage from such failure to record, he may still attack the deeds for fraud, which the plaintiff in this case has done. The disposition of this feature of the case by his Honor is satisfactory.

The interesting question whether the deeds, executed in good faith, had been purposely kept from record, with a view of establishing a false credit with the plaintiff, and that thereby a fraud was committed upon it, has not been raised in the case. It is debatable whether the plaintiff is not now bound by its election to consider the deeds fraudulent. *Ebner v. Haverty Furniture Co.,* 138 S. C., 74, 136 S. E., 19.

The judgment of this Court is that the decree appealed from be affirmed.

Mr. Chief Justice Watts and Messrs. Justices Blease, Stabler and Carter concur.